Lutjen v. Lutjen.

### HENRY E. LUTJEN

*v.*

### HELENE LUTJEN et al.

[Submitted March 11th, 1902. Decided April 4th, 1902.
Filed September 8th, 1902.]

1. Under *Gen. Stat. p. 3760 § 19*, providing that for raising the portion of children of a testator, born after the making of the will, the devisees and legatees therein shall contribute proportionately out of the part devised or bequeathed to them, the amount due to such after-born children from each legacy is to be ascertained as if such legacy were the only property disposed of; as where a testator left a legacy to his only son at the time the will was made, and the balance of his estate to his wife, and two children were born thereafter, the son's legacy would be ascertained by deducting from the whole amount thereof two-thirds of a balance left after excluding one-third of the whole amount as representative of the widow's share in cases of intestacy, which, as the widow took under the will in lieu of dower, would go to the legatee without deduction.

Lutjen *v.* Lutjen.

2. Where a testator gave his son a specific legacy, with a residuary legacy to his wife, and there were children born after the making of the will, no commissions for settling the estate could be added to the amount deducted from the son's legacy as the portion of the after-born children, but they must come out of the residue of the estate.

3. A testator, after executing a will, in which he gave a legacy to his son, who was six years old, immediately married a second wife, whom he had made residuary legatee in the will. The son regarded his stepmother as his mother, and after his father's death lived with her until he was twenty-three years old, the age at which he was to receive his legacy. Testator had two children by his second wife, and, some time after his death, the widow, who was also administratrix *cum testamento annexo*, told her stepson that the birth of these children destroyed the will, and that his share of the estate would be a certain amount less than was really due him. Accordingly, he, relying on her statement, accepted the amount proposed by her, and executed a release of his legacy, which was prepared by the county surrogate at the instance of the stepmother. The son was a man of slender mental capacity, totally ignorant of business, and unassisted by anyone in making the settlement.—*Held*, that he was not bound by the release.

4. Though the stepson did not institute suit to recover the residue of his legacy for ten years, it appearing that he did not discover the error in the settlement until a few months before suit was brought, and that those months were spent in fruitless endeavor to obtain an amicable settlement, he was not barred by lapse of time from maintaining the suit.

On final hearing on bill, answer and proofs.

*Mr. Maximilian T. Rosenberg,* for the complainant.

*Mr. Charles L. Corbin,* for the defendants.

PITNEY, V. C.

The complainant is the son and a legatee named in the will of John Henry Lutjen, and the defendant Helene Lutjen is his stepmother and the executrix of the will and residuary legatee and devisee. The object of the bill is to set aside a release given by the complainant to his stepmother in full for his legacy. The allegations are that the amount paid him therefor—$5,000—was not equal to the amount actually due upon a proper estimate of the same, and that no computation was made for that purpose by him, but that he accepted that amount, relying upon the statements of his mother in that behalf.

Lutjen *v.* Lutjen.

The facts are as follows:

The testator was, at the time of making the will (1874), a widower, with one child, the complainant, who was then about six years old. The testator was about to marry the defendant Helene. By his will he bequeathed to the complainant $10,000, to be paid to him when he should arrive at the age of twenty-three years, together with the interest thereon, payable to him half yearly, the said sum to be invested in good securities or on bond and mortgage. The remainder of the estate, real and personal, he bequeathed and devised absolutely to the defendant Helene, with a provision that said bequest and devise were to be in lieu of her dower. The clause is as follows:

"I give, devise and bequeath unto Helene, to whom I am engaged to be married and who is my intended wife, to have and hold same forever, but this provision is intended by me and shall be accepted by her in lieu and bar of dower in my estate."

After the making of the will the testator had two other children born. He died in the year 1883, when the complainant was about fifteen years old, leaving his widow (Helene), the complainant and the two after-born children. The widow administered *cum testamento annexo*. The testator left personalty amounting to $12,263.21 and real estate estimated to be worth $6,000. These funds were deposited in various savings banks, and so remained until the giving of the release complained of. They were never invested as directed by the will.

On the marriage of the testator the complainant became a member of his family, and regarded his stepmother in the light of a mother. She brought him up. He continued to live with her and her family after his father's death, and after he became of age, and until about five years before the filing of the bill, when he married. He, at all times, as appears from the testimony, regarded the defendant Helene as the head of the family.

Some time after his father's death he was informed by his mother that the effect of the birth of his half-brother and sister was to entirely destroy the will, and that when he became twenty-three years of age there would be about $5,000 coming to him. Accordingly, when shortly after he attained the age of twenty-

three his mother proposed to pay him that sum, he accepted it without question.

The release was prepared by the surrogate of the county, at the request of the defendant Hélene, and was probably based on some sort of rough calculation made by him as to the amount which would be due to the complainant, but the latter took no part in the affair.

Two questions were debated—*first,* Was there any mistake made? and *second,* Has the time which has elapsed been so great as to bar the complainant's remedy?

With regard to the first question: The difference of opinion between the respective counsel lies in the mode of ascertaining the amount due to the after-born children and of distributing it among the beneficiaries of the will.

The complainant's theory is that the amount due the after-born children from each legacy is to be ascertained as if that was the only property disposed of, and the legatee is to contribute his share of it—that is, that the contribution should be made distributely, and not collectively. For example: He says the legacy of $10,000 given to the complainant must be dealt with thus: First ascertain the amount which the after-born children would receive thereout if there had been no will; after deducting that sum, give the balance to the complainant. The result of that method would be that the legacy to complainant would be disposed of as follows: Deduct one-third of it as due to the widow absolutely in case of intestacy, and there remains $6,667 to be divided among three children, making $2,222 to each, or $4,444 to the two after-born children, which deducted from the whole $10,000 leaves $5,556 to the complainant. By this mode of ascertainment, the share—$3,333—which would have gone to the widow in case of intestacy, goes, in accordance with the terms of the will, to the complainant.

The residue of the whole estate given by the will to the widow is to be disposed of in the same way, and all of it, except the share which would go to the two after-born children, in case of intestacy, will go to the widow under the residuary clause.

This method, the complainant argues, satisfies the language of the statute, and also conforms to the rule which has been

adopted by the courts in the construction of it, namely, that, except so far as it is necessary to make up the shares of the after-born children, the will is to stand.

That rule is stated by Chancellor Runyon, in *Wilson* v. *Fritts, 5 Stew. Eq. 59,* as follows: "The will stands, except so far as the disposition of property under it is disturbed by the necessity of contribution to make up the portion of the posthumous child. The devisees and legatees, those to whom the testator has given his property by his will, must contribute from that which is devised or bequeathed to them by the will such a portion as the pretermitted posthumous child would have been entitled to out of the estate of which the testator was possessed at the time of his death had the father died intestate."

The language of the statute is:

"Towards raising which portion or ·portions [of the after-born issue] the devisees and legatees or their representatives shall contribute proportionably out of the part devised and bequeathed to them by the same will and testament."

Applying this rule to the residue devised to the widow, we find that the two after-born children will each take an undivided one-third part of the land, subject to their mother's right of dower, and the other one-third, which, but for the will, would have descended to the complainant, will pass, by the will, to the widow.

I presume that the better opinion is that, under our statute two equal undivided one-third parts of the land descended to the two after-born children immediately upon the death of their father.

Counsel for the defendant suggests and urges a different mode of solving the problem. He contends that the whole estate, real and personal, must be thrown into hotchpot, and therefrom must be taken, first, one-third of the personalty which the widow, in case of intestacy, would receive outright, and then the value of her right of dower must be determined according to the life tables, and the personalty and the realty, after such deduction, added together, and the amount which the after-born children will take be ascertained, and then the amount which the com-

Lutjen v. Lutjen.

plainant and the widow shall severally contribute be ascertained
by the proportion which the whole estate, excluding the widow's
right of dower, bears to the amount which the after-born chil-
dren take.

As worked out by him it is as follows:

> "It is agreed that the land was worth.......... $6,000 00
> "Of this, the value of the widow's dower at the
> age of 34 is, in round numbers, 23½ %...... 1,410 00
>
> "Value of decedent's land............... $4,590 00
> "The personalty was........................ 12,263 00
>
> "Total estate ........................ $16,853 00
> "Deduct widow's 1-3 of personalty............ 4,087 00
>
> "Share of three children............... $12,766 00
> "Share of 2 after-born children, 2-3rds.. $8,510 00
> "The percentage is ascertained as follows:
> "$8,510 –:– $16,853 ............................. 50½%
> "Deduct this percentage from the legacy of $10,000, leaves $4,950,"
instead of $5,556.

The complainant's mode of solving the problem is that adopted
by the supreme court of Illinois, in the case of *Ward* v. *Ward,
120 Ill. 116.* The Illinois statute is precisely like our statute.
The court cited several authorities from Virginia and Kentucky,
and seem to have given the matter careful consideration.

I prefer the complainant's plan. I think the real estate should
be kept by itself. In the first place, I think, under the statute,
it would descend at once and vest in the two after-born children;
and, in the next place, the complainant should not be bound by
a mere valuation of it.

Besides, the will declares that the provisions for the widow
shall be accepted by her in lieu of dower. Now, as the land
passed with the residue to the widow, the provision barring
dower would have been an idle one, as between the complainant
and the widow, if no other children had been born, because it
did not diminish the complainant's legacy. But the incoming
of after-born children alters the situation. The widow cannot
claim both legacy and dower if the enforcement of such clause
disturbs the testator's scheme, and, in the actual situation, it

does disturb it, and seems to me entitles the complainant, under the actual circumstances, in making up the contribution to be made by each, to have the real estate, if it is brought into the estimate, to be put at its full value, without any deduction for the widow's right of dower.

If we adopt the defendant's scheme of throwing the realty and personalty into hotchpot, excluding the widow's dower as against complainant, the result will be as follows:

| | |
|---|---:|
| Personalty ........................................ | $12,263 00 |
| Realty ............................................ | 6,000 00 |
| | $18,263 00 |
| Share of after-born children.................. | 8,510 00 |

of which complainant must furnish a portion due to the relation between $18,263 and $8,510, which would make the amount of complainant's contribution $4,659, instead of $5,050 under the complainant's plan, a difference of $391, and a difference of $215 from the complainant's plan.

Upon the whole, I adopt the complainant's rule for solving the problem, with the result that the complainant was, on attaining the age of twenty-three years, in 1891, entitled to the sum of $5,555, together with interest thereon from the time of his father's death (since there was no time spent in collecting and investing the money), at such rate of interest as it is reasonable to believe the widow must have received free and clear of taxes, which rate I fix at four per cent.

It would seem that a large part of the money was deposited in different savings banks, and, as I recollect, it was admitted that that rate of interest was received on all of the deposits, free of tax.

The widow is not entitled to any abatement of any commissions for settling the estate. That comes out of the residue of the estate, and is very properly a matter between her and the after-born children. The inventory amounted to $12,166.73, and the interest collected before the settlement of the account made it $13,014.28, and from this was deducted the commissions and expenses. The complainant was entitled to his legacy free and

clear of commissions. His father died on March 10th, 1883, and the legacy was paid on October 21st, 1891, eight years and seven months thereafter. Interest on $5,555, at four per cent. a year, for eight years and seven months, would be $1,907.20, making a total of $7,462.20.

Had I adopted the defendant's scheme of ascertaining the complainant's share, the interest would have been $1,699.50, which, added to the principal of $4,950, would make $6,649.50. This shows that, whichever plan had been adopted, a clear mistake was made by the deputy surrogate, or whatever person calculated the value of the complainant's share in his father's estate.

But the defendant claims that the complainant lived at home for many years, and had support and maintenance. The facts on that subject are as follows:

The complainant, at the time of the father's death, as we have seen, was fifteen years old. He had stopped going to school, and was working for a druggist, intending to learn the business, and received $3 a week salary, which he had turned over to his father. His father kept a shoe store, and, after his death, his stepmother continued it, and, at her request, the complainant came home to assist in the business at the shoe store. He received his board and $2 a week for his services. That continued about two years. He clothed himself out of that sum, and saved some little money; took a trip to Germany, as steerage passenger, visited his stepmother's relatives there for a short time, and worked his passage home. He then obtained a position in New York City, in a hardware store; began with $3 a week, and continued in that business until his salary amounted to a competent sum. Out of the $3 a week he reserved enough to clothe himself and cover such small daily expenses as he incurred, and handed the balance to the defendant for his board; and he paid board to her until he was married, increasing the amount from time to time, as he could afford it, to $5 a week. When he first went into business in New York he assisted his stepmother in the shoe store at night, and also purchased goods for her in New York during his lunch hour.

I infer from the evidence that there may have been a period of five years, say from 1883 to 1888, during which the complainant was a slight burden to the defendant in the way of expense over and above the benefit in labor and money which she received from him. I am of the opinion that $1 a week during that time, or say $250 in all, will entirely compensate her for the supposed deficiency in his actual payments and the value of his services. Besides, the defendant had the benefit of the actual compounding of the interest received on his legacy from the time of her husband's death—1883—up to the time of the payment of the $5,000 in 1891. So that, making due allowance for that sum, there was due to the complainant when the settlement was made the sum of $7,462.20, less $250, making $7,212.20. This calculation is subject to correction if I have made any mistake in dates or figures.

The next questions are: How far is complainant bound by his release; and what effect on his rights must be given to the delay of nearly ten years in the filing of his bill?

The complainant is a man of slender intellectual capacity, and, at the time of the release, was entirely unfamiliar with business affairs. He employed no counsel or business friend to assist him, but relied upon his stepmother's statement of the amount due. The settlement, so far as there was one, was made at the surrogate's office, and had the apparent sanction of that semi-judicial officer, whose duty the complainant might well have thought it was to protect his rights and ascertain judicially the amount due him. His stepmother had stated to him that the will was annulled by the birth of her children. This was not true in law; but she cannot complain that he relied upon it. Nor can she complain that he relied upon her statement that only $5,000 was due him, when a much larger sum, upon a proper accounting, was due. He accepted and relied upon her simple assertion, without any explanation of the mode of arriving at that result. Here, again, she cannot complain that he did so rely.

If the mode of ascertaining the amount due him had been shown to him, if the scheme of solving the problem arising out of the after-birth of his half-brother and sister had been laid

Lutjen *v.* Lutjen.

before him, and he had assented to it, after opportunity to examine it, a different case would present itself. But, by the case presented, the mistake was wholly that of the defendant, and is one for which she is wholly responsible, and for the making of which the complainant cannot be charged with any neglect, nor for his failure to discover it at that time. At least, it does not lie in the mouth of the defendant to charge him with such neglect. If, then, the bill had been filed shortly after the transaction, there could be no defence on the ground of the natural sanctity due to a solemnly-executed instrument.

Then, as to the lapse of time. This is an action for a legacy, to which the statute of limitations does not apply. *Hedges* v. *Norris, 5 Stew. Eq. 192.* The rule there stated and established has never been disturbed in New Jersey. The only reason for applying the statute of limitations to an action in equity for a legacy is that, by a statute, an action at law is given; but it is doubtful if in the present case an action at law would lie. In fact, the statute of limitations was not set up, either in the answer or at the argument; but the long delay was urged.

But it appears that the complainant did not discover the error until a few months before the bill was filed, and the intervening time was spent in futile efforts to adjust the matter without suit. The complainant has not slept on his rights after he became aware of them. The case, in that respect, is somewhat like that of *Lindsley* v. *Dodd, 8 Dick. Ch. Rep. 69,* and, on appeal, *8 Dick. Ch. Rep. 652;* and, again, *12 Dick. Ch. Rep. 334.*

The claim is not what is known as a stale claim—one that has been slept on after it was known; and I think that, under the circumstances, it does not lie in the defendant's mouth to complain of it. She does not occupy the position of a disinterested trustee. She is the residuary legatee under the will, and the mother of the after-born children.

Then it is said that the defendant has settled with one of her own children on the basis of the release given by the complainant. It appears that she has conveyed some of the real estate to one of her children; but the evidence fails to satisfy me that it was done upon any nice calculation of the amount due that child based upon the release in question. Be that as

it may, the two after-born children are parties to this suit, and will be bound by its result; and the mother can recover from them whatever they ought to contribute toward the amount she will be obliged to pay under the decree made herein.

I will advise a decree for the amount due the complainant at the time the $5,000 was paid, less that sum, with interest at four per cent. on the balance to date, together with costs.

I have assumed four per cent. as the amount of interest which the defendant received upon the several deposits in savings banks which constituted the bulk of her husband's estate. The defendant is at liberty, before decree signed, to show, as she can easily do by reference to the books of the several banks, that the interest actually received by her was less than four per cent. Again, the defendant swears that she paid the complainant a little more than $5,000. The complainant denies this. The payment was by transfer of savings bank accounts. Here the issue between them can also be easily settled by a reference to the several accounts actually transferred. If she paid more than $5,000, she will have credit for it.