LORENZO H. CONE and REBECCA C. CONE, executors &c. of Jonathan Cone, deceased,

*v.*

RUSSELL & MASON.

Complainants, as executors and trustees, held certain shares of stock in an incorporated company; defendants held certain other shares therein, which, added to those held by complainants, constituted a majority of all the shares. Complainants on the one part and defendants on the other entered into a con-

Cone v. Russell & Mason.

tract by which complainants agreed to execute, and in pursuance thereof did execute, a proxy, irrevocable for five years, to defendants to vote at all stockholders' meetings upon the complainants' shares; and defendants, in consideration thereof, agreed to so vote said shares as that one of the complainants should be continuously employed as manager of the corporation, at a salary of $2,500 a year.—*Held*, (1) the agreement is void—*first*, because against public policy; and, *second*, because a breach of trust by complainants. (2) That complainants are entitled to relief against the defendants and an injunction against the use of the proxy, notwithstanding their position *in pari delicto* with defendants.

On order to show cause why injunction should not issue. Heard on bill, answer and affidavits.

*Mr. William E. Potter* and *Mr. Thomas E..French*, for the complainants.

*Messrs. Grey & Grey*, for the defendants.

PITNEY, V. C.

The complainants, Lorenzo H. Cone and Rebecca C. Cone, executors &c. of Jonathan Cone, deceased, by their bill, ask that the defendants, William F. Russell and Charles H. Mason, be enjoined from voting at any stockholders' meeting of the Upper Delaware River Transportation Company, by virtue of a certain power of attorney or proxy, irrevocable, executed by complainants to defendants, authorizing and empowering them to vote upon four hundred and seventy-seven shares of the stock of said corporation belonging to the complainants as executors, and praying that said power of attorney or proxy, and a certain agreement between the parties presently to be set out, may be decreed to be null and void and delivered up to be cancelled.

The agreement in question is as follows:

"This agreement made this Twenty-ninth day of March, Anno Domini Eighteen hundred and eighty-nine,

"Between Rebecca Cone and Lorenzo H. Cone (Executors of the will of Capt'n Jonathan Cone, deceased), and said Rebecca Cone and Lorenzo H. Cone, of Philadelphia, Pennsylvania, in their own right, of the first part;

"And William F. Russell and Charles H. Mason, trading as Russell and Mason, of the same place, of the second part,

14

Cone v. Russell & Mason.

"Witnesseth: Whereas said party of the second part have become the owners of a block of Seventy-five (75) shares of the capital stock of the Upper Delaware River Transportation Company purchased by them, by the request of said party of the first part, and upon an understanding and agreement had, with said party of the first part, that the said stock so purchased should be used with the stock owned or controlled by said party of the first part, for the purpose of securing and maintaining the control of said Company and of . effectuating the agreement hereinafter set forth.

"Now this agreement witnesseth, that said parties of the first part and second part, in consideration of the premises, of the sum of one dollar, by each of said parties paid to the other, and of certain other valuable considerations interchanged between said parties, do hereby for themselves, their and each of their heirs, executors, administrators and assigns covenant and agree, each with the other, severally and not jointly, as follows:

"1. That the said party of the first part will, immediately upon the execution of this agreement, execute and deliver to said party of the second part a power of attorney, irrevocable, authorizing said party of the second part, or the sur-·vivor of them, to vote at all elections and upon all questions that may arise requiring a stock vote, for and in the name and behalf of said parties of the first part, upon all stock of said The Upper Delaware River Transportation Company held by them or standing in their name, or in the name of either of them, individually or as executors as aforesaid or in the name of the estate of Jonathan Cone, or of J. Cone, and within three years from the date of said letter of attorney renew the same so that the same shall be kept alive, and said representation shall continue uninterruptedly for a period of five years from and after the date hereof.

"2. That said party of the second part, and the survivor of them, shall from time to time vote said stock at their or his discretion for the promotion of the best interest of said Company, and that they and he shall and will vote said stock and use said power so as to elect or secure the election of directors of said The Upper Delaware River Transportation Company who shall and will elect and appoint said Lorenzo H. Cone as Manager and member of the Board of Directors of said Company from time to time, and as often as may be necessary to secure to said Lorenzo H. Cone the said office of Manager for the period of five years from the date hereof, at a salary of Twenty-five hundred dollars ($2,500.00) per year, he, said Cone, faithfully discharging the duties of said office for said period.

"3. That neither of said several parties hereto shall for the period of five years from the date hereof sell, offer for sale, or suffer or permit to be sold, the said stock of The Upper Delaware River Transportation Company owned by or standing in the name of them or either or any of them, whether as individuals or as executors as aforesaid, or in the names of the Estate of Jonathan Cone or of J. Cone, without obtaining the previous written consent of the other parties to this agreement.

"4. And because of the extreme difficulty of ascertaining or determining by judicial inquiry the measure of damage or the amount of compensation which

Cone v. Russell & Mason.

·either party would be entitled to have or claim from the other, by reason of the breach of, or of the failure to perform, any of the covenants and agreements aforesaid, it is hereby expressly covenanted and agreed by and between said several parties hereto, that in case of any breach of, or of the failure to perform, any of the covenants and agreements herein contained, the person or persons so committing such breach, or so failing to perform shall pay to the ·other parties to this agreement the sum of Twelve thousand five hundred ·dollars ($12,500.00) as a compensation and satisfaction for such breach or fail-·ure, which said sum it is hereby agreed shall be and be considered to be liqui-·dated damages settled by this contract, and not as a penalty.

" In Witness Whereof, said several parties hereto have interchangeably set .their hands and seals the day and year aforesaid.

" Sealed ·and delivered in presence of

" REBECCA C. CONE, [L. S.]<br>
" LORENZO H. CONE, [L S.]<br>
Executors of the estates of Jonathan Cone, Dec'd.<br>
" REBECCA C. CONE, [L. S.]<br>
" LORENZO H. CONE, [L. S ]<br>
" WILLIAM F. RUSSELL, [L. S.]<br>
" CHARLES H. MASON, [L. S.]<br>
" RUSSELL & MASON. [L. S.] "

"Alteration from six hundred and fifty-four (654) shares to Seventy-five (75) ·shares on eleventh line first page of this agreement before signing.

At the date of this instrument the complainants were the ·owners, as executors, of four hundred and seventy-seven shares ·of the stock mentioned, and the complainant Lorenzo H. Cone was the owner of ninety-six shares, and shortly afterward became the owner of ten additional shares thereof, which became subject to the contract, and, added to those already owned by the defend-.ants, constituted a majority of the stock of the corporation.

The power of attorney and proxy was duly executed by the complainants as executors, and also one by L. H. Cone individu-ally, and at the annual meeting of April, 1889, the defendants, by their use, elected themselves and some of their employes ·directors, and thereby secured a majority of the board.   The new board elected the defendant Russell president, with a salary of .$1,500 a year, the defendant Mason treasurer, with a like salary, and one Beek, a clerk of the defendants, secretary of the company, with a salary of $500 a year, and appointed L. H. Cone ·manager thereof, with a salary of $2,500 a year.   At the same

annual meeting a majority of voices of the stockholders voted in favor of a motion to limit the total expenditure for salaries of officers to $1,000 per year, but the vote by shares given by the defendants refused to sustain the motion. From that date to this the affairs of the corporation have been managed by the defendants with the actual ownership of eighty out of thirteen hundred shares of its stock.

As might have been expected, differences soon arose between the parties, resulting in three bills in this court prior to the one underlying the present motion.

Complainants base their right to the relief now sought upon three grounds. *First*, they say they were induced to enter into the agreement and execute the proxies by a fraud practiced upon them by the defendants, the particulars of which are set out in the bill. *Ex parte* affidavits on both sides, bearing on the question of fraud or no fraud, have been read. I deem it worth while to say on this point only that I think the fraud is not made out with sufficient certainty and clearness, and with sufficient weight of evidence, to warrant interposition by interlocutory injunction.

The *second* ground taken by the complainants is, that the contract in question is against public policy, and tends to work a fraud on the other stockholders, and is void upon that ground. And the *third* ground is, that the complainants, executors and trustees, had no right to depute their trust to others, as is done by this agreement, and that on that account also it should be decreed void.

The theory upon which the capital of numerous persons is associated in various proportions in the shape of a trading corporation, to be managed by a committee of the stockholders, is that such committee shall truly represent and be subject to the will of the majority in interest of the stockholders. The security of the small stockholders is found in the natural disposition of each stockholder to promote the best interests of all, in order to promote his individual interests. A member of an ordinary partnership has an additional security in the personal character of each of his partners, and may decline to be associated with

Cone v. Russell & Mason.

-any whom he does not know and approve. But a stockholder in a corporation cannot control the *personnel* of his associates, -and must rely upon their self-interest alone.

Upon the foundation of the natural disposition of persons to promote their own interests rests the rule established in this -state, in the famous case of *Taylor* v. *Griswold, 2 J. S. Gr. 222,* that a trading corporation could not, without special legislative authority, make a by-law authorizing a stockholder to vote by proxy. The principle established by that case is " that the obli--gation and duty of corporators to attend in person and execute the trust or franchise reposed in or granted to them, is implied in and forms a part of the fundamental constitution of every charter in which the contrary is not expressed ;" and the reason given by Chief-Justice Hornblower (at *p. 227*), and again by Justice Ford (at *p. 250*), is that the good of the stockholders, as well as of the public, requires that each stockholder should exercise his individual judgment as to all matters presented.

In *Fuller* v. *Dame, 18 Pick. 472* (at *p. 484*), Chief-Justice Shaw says : " Mr. Fuller was one of the original proprietors of the Worcester railroad. His associates had a right to believe that, in all his acts as such stockholder, in choosing directors, in framing by-laws, and doing other acts, pursuant to the powers of the corporation, he had a common, and, in proportion to his -shares, an equal interest, and they had a right to rely on his judgment, his recommendations of directors and other acts, with all the confidence inspired by such a belief."

Our legislature has, since the decision in *Taylor* v. *Griswold,* -authorized the use of proxies, limiting them, however, to three -years. But the principle still remains that the proxy is supposed to vote for the principal and in his interest. If a majority -of the stock is owned by one person, he has no right to use his power as such owner to advance his private interests at the -expense of the minority. And, in like manner, he has no right to depute to another, who has little or no interest in the corpora--tion, a power to use his stock for that purpose. Such deputation is the more dangerous because the person entrusted with the power has no such inducement to promote the interests of the

corporation as the stock owner has. Where the majority of
the stock is owned by one man or set of men, acting in concert,.
the minority are, to some extent, protected by the natural inter-
est of the majority to promote the real interest of the corporation.
But where a person, who has little or no actual ownership, has
the unrestricted voting power of a majority of the stock, the
minority loses this protection, and what may be properly termed
the underlying and fundamental understanding and contract
upon which the association is founded is abandoned and broken.

The motive which may induce the owner of a controlling
interest in the corporation to deprive himself of and depute to
another the power to use it as he may see fit, during a fixed
period, may be of little consequence to his associates, but is usually
found in some consideration of personal gain. In the case in
hand it is the employment of complainant L. H. Cone as man-
ager for a fixed term and at a fixed salary, and irrespective of
the actual value of his services. The avowed object and pur-
pose of the defendants was to secure to themselves like employ-
ment and salaries. The mere statement of the affair seems to
me to condemn it. The motive was in itself improper and
unlawful. Servants of a corporation should be employed and
paid upon their merits, and buying votes for an office in a cor-
poration is of the same objectionable character as buying them
for a public office. The same may be said of buying the right
to control the business policy and management of the affairs of
a corporation.

In *Guernsey* v. *Cook, 117 Mass. 548; S. C., 120 Mass. 501,*
the contract was that the defendant, who with another acting in
concert with him owned the majority of the stock of a corpora-
tion, agreed with the plaintiff that the plaintiff should be em-
ployed as treasurer at a salary of $3,500 per year, and should
purchase one hundred shares of the defendant's stock at par, but
leave it in the control of the defendant, and in case plaintiff
should be discharged as treasurer, defendant should repurchase
the shares at the same price with interest. Plaintiff was dis-
charged, and brought his action for the price of the shares of
stock. The contract was declared to be void, as a fraud upon

the other stockholders and as against public policy, and the action, "which," to use the language of the court, "is not in avoidance but in direct affirmance of the contract," was defeated. The reasoning of the court in arriving at this conclusion seems to me to be sound.

This case was followed by *Woodruff* v. *Wentworth, 133 Mass. 309*, where it was held that a contract between two stockholders in a corporation by the terms of which one, in considertion of a sum of money paid to him by the other, agrees to vote for a certain person as manager of the corporation, and also to vote to increase the salary of the officers of the corporation, including that of the manager, is void as against public policy, and doubt is expressed as to whether such assent would cure its vice.

In *Foll's Appeal, 91 Pa. St. 434*, the Supreme Court of Pennsylvania went so far as to refuse specific performance of a contract to sell a comparatively few shares of stock in a national bank, where the avowed object was to enable the purchaser to obtained the control of the bank, and who for that purpose had already bought up, largely with borrowed money, almost a majority of the stock. The learned judge, speaking for the court, says (*p. 437*): "The stock, as now held, is scattered among a variety of people and held in greater or lesser amounts. It is difficult to see how the small stockholders who have modest earnings invested in it, the depositors who use it for the safe-keeping of their money, or the business public who look to it for accommodation in the way of loans, are to be benefited by the concentration of a majority of its stock in the hands of one man, or in such a way that one man and his friends shall control it. Especially is this so when, as here, an attempt is made to control it by the use of borrowed capital. The temptation to use it for personal ends in such case is very strong."

For an instance of the abuse of power by an actual majority in ownership of stock in a corporation, see *Winthrop* v. *Iron Co., 17 Fed. Rep. 48*.

Following the reasoning of these cases, I conclude that the contract complained of in this suit is void as against public policy. This conclusion does not reach so far as to necessarily

forbid all pooling or combining of stock, where the object is to carry out a particular policy with the view to promote the best interests of all the stockholders. The propriety of the object validates the means and must affirmatively appear.

The contract is also void, because the making of it was a breach of the trust upon which the complainants hold this stock. It was admitted at the hearing that most, if not all, of it belonged to the complainants' testator at his death, and was properly chargeable with the trusts of his will. By consent the will was put in evidence, and it was admitted that Lorenzo H. Cone had a living child. By the terms of the will, however, as I read it, the existence of this child does not end the trust created by it.

It is too clear for argument that the complainants, by this agreement and proxy, have so far as possible deputed irrevocably the execution of this trust to the defendants for the term of five years, and that such act is unlawful. It is far within the rule promulgated in *Elliot* v. *Chamberlain, 11 Stew. Eq. 604,* where an agreement to renounce an executorship for moneyed consideration was held illegal because against public policy.

And see *2 Perry Trusts* §§ *402, 408, 409.* In the latter section the distinction is pointed out between the appointment of an agent or proxy to carry out and execute the determination of the trustee, arrived at in the exercise of his own judgment and discretion, and the delegation to another of the control and management of the trust property at the judgment and discretion of that other.

And see *Lewin Trusts 290, 291, 296, 297.* And the rule against the delegation of the trust goes so far as to hold that the attempted exercise of the duties of trustee by the substitute, when such exercise involves discretion, to be absolutely void. *Lewin Trusts 296* and cases.

But it is urged in answer to both these positions that the complainants have no standing in this court because they stand *in pari delicto* with defendants.

There are two answers to this argument. In the first place the complainants are not asking for any affirmative relief by way of advantage from the contract. They are not asking to enforce

it and reap its fruits. On the contrary, they are asking to be relieved from its apparent obligations and to prevent any mischief which may be done under it. No money or other valuable consideration has passed between the parties. Whatever complainant Lorenzo H. Cone has received by way of consideration has come from the corporation, and for that, so far as unearned, he is probably liable to respond to the corporation. · *Gardner* v. *Butler*, *13 Stew. Eq. 702*. Nothing is demanded from the defendants. The complainants come here and confess that they have entered into a contract which they ought not to have entered into, and which was a fraud upon other parties, and they ask the court to declare that it no longer binds them, and that the other parties to it have no rights under it. In short, to aid them to undo, as far as possible, the wrong they have done. It seems to me this court ought not to turn its face from and shut its door against such suitors.

But a second and complete answer is that the maxim *in pari delicto, potior est conditio defendentis,* does not apply to a case like this, resting upon the ground of public policy. *1 Story Eq. Jur.* § *298,* and cases there cited.

*Morris* v. *McCulloch, 2 Eden 189,* was a bill to recover £200 paid by the complainant to defendant for procuring him a commission of lieutenancy in the marines. After he had received it and entered upon his duties it was discovered by his brother officers that he had been a liveried servant, and on that account his commission was revoked. It appeared· that he knew in advance that his previous social position, if discovered, would debar him. Held, notwithstanding, that he was entitled to repayment, because the contract was against public policy.

In *Esterbrook* v. *Scott, 3 Ves. 456,* a bond given by a bankrupt debtor to a creditor, conditioned to pay him whatever a dividend upon his estate in bankruptcy might fall short of paying his debt, was declared void as against public policy and decreed to be delivered up to the complainant.

*Hatch* v. *Hatch, 9 Ves. 292,* was a bill to set aside a sale of an advowson from a female ward to her guardian. After the conveyance was consummated the ward intermarried with the attor- :

ney, who was the brother of and aided the grantee in the purchase and drew the deed, and was now co-complainant with the ward. Objection was made by the defendant that the husband of the complainant stood *in pari delicto.* Lord Eldon said he was " sorry to give the husband any relief, but he knew of no instance in cases of relief founded upon the policy of the law where the objection that a party not deserving relief would get it had prevailed."

*St. John* v. *St. John, 11 Ves. 526,* which received great consideration, was a bill by a husband against his wife, asking to have delivered up a deed of separation between them because void as against public policy. It was objected by the wife that the husband stood.*in pari delicto,* and Lord Eldon said (*p. 535*) :. " The authorities go to this, that where the transaction is against. policy it is no objection that the plaintiff himself was a party in that transaction which is illegal. In *Shirely* v. *Ferris,* in the court of exchequer, a few years ago, the case of a marriage brokage bond, the plaintiff was a party to the transaction, *particeps criminis,* but the court held that where the relief is based upon the policy of the law that is not material. The public interest requires that the relief should be given and it is given. to the public through that party."

And see several cases where marriage brokage bonds were decreed to be delivered up, collected in *1 Eq. Cas. Abr. 89.* See,. also, *1 Pom. Eq. Jur.* § *403.*

For these reasons, I am of the opinion that the contract and proxy set out and mentioned in the bill are void, and complainants are entitled to relief against them, and that the injunction prayed for must go.

I will advise an order accordingly.