RUDOLPH A. LOEWENTHAL and C. EDWARD MURRAY

*v.*

THE RUBBER RECLAIMING COMPANY, DANA BARTHOLO-
MEW, N. CHAPMAN MITCHELL, EDWARD R. SOLLIDAY
and GEORGE O. SCHNELLER.

> The certificate of incorporation of a trading company organized under the General Corporation act, together with the by-laws adopted at the time and as a part of its organization—*Held*, under the circumstances of this case, to constitute a contract between the stockholders which cannot be altered by legislative authority unless with the consent of all the stockholders or in the manner provided in the certificate and by-laws.

---

On bill for injunction. Final hearing on pleadings and oral proofs.

*Mr. Charles L. Corbin,* for the complainants.

*Mr. William S. Gummere,* for the defendants.

PITNEY, V. C.

The complainants are stockholders in the defendant company. The individual defendants are officers and directors of it. The company was organized under the General Corporation act of this state. The object of the bill is to restrain a change in the certificate of its organization and in its by-laws which the indi-

Loewenthal v. Rubber Reclaiming Co.

vidual defendants propose to make by the vote of a mere majority of the stockholders, under the authority of the sixth section of a supplement to the Corporation act, approved March 21st, 1893 (*P. L. of 1893 p. 445*), which provides—

"That it shall be lawful for any corporation organized or that may be organized under any general law of this state, with the assent of a majority in interest of its stockholders, at a special meeting to be called for that purpose, to amend its original certificate of incorporation by a certificate which shall be duly signed by its president and attested by its secretary, under its corporate seal, and in all respects executed in the same manner as its original certificate of incorporation, which amended certificate shall be recorded in the office of the clerk of the county wherein the original certificate was recorded and filed in the department of state ; and thereupon such amended certificate shall take the place of the original certificate of incorporation and shall be deemed to have been recorded and filed on the date of the recording and filing of the original certificate."

Complainants allege and contend that the certificate of organization and the by-laws contemporaneously adopted constitute a contract between the stockholders, and that it is not competent for the legislature to authorize either to be changed without the consent of all the stockholders, except it be done in the mode provided by the by-laws themselves.

The law as contended for by complainants is well settled. *Mills* v. *Central R. R. Co., 14 Stew. Eq. 1,* and cases cited. If the certificate of incorporation and the by-laws of a corporation form a contract between the stockholders, then the legislature has no power to authorize a mere majority to alter it except in the manner provided by the contract itself.

That the ordinary certificate of organization does form such contract seems too plain for argument. It takes the place of the special charter under which our corporations were usually organized before the constitutional amendments of 1875. Whether any particular by-law also forms a part of such contract depends upon the time when, and the circumstances under which, it was adopted. If it was adopted as a part of the original organization of the company, so that the subscriptions of stock were made and money paid thereon upon the strength of it, then it becomes a part of the fundamental contract between the stockholders.

This position was held by the court of appeals of New York, after elaborate argument and full consideration, in *Kent* v. *Quicksilver Mining Co., 78 N. Y. 159,* and is supported by vigorous and weighty reasons and a careful consideration of the adjudged cases found in the opinion of Chief-Justice Folger (at *pp. 179, 182*). It was there held that vested rights acquired under such a by-law could not be disturbed by a later by-law, although such later by-law was adopted in pursuance of a power reserved in the original by-laws to alter the same.

In the same direction is *Belfast* v. *Belfast, 77 Me. 445,* and *Hazeltine* v. *Belfast, 79 Me. 411.*

The facts here are that prior to the organization of this company, four distinct corporations and one mercantile firm, five in all, viz., the Philadelphia Rubber Works, the L. & M. Rubber Company, the New Jersey Rubber Company, the Derby Rubber Company and the mercantile firm of Murray, Whitehead & Murray, were each engaged in the manufacture of reclaimed rubber; that in February, 1890, they associated themselves together for business purposes, under a written agreement containing, among others, this provision :

"Each corporation or partnership subscribing hereto shall be entitled to one membership and to one vote at all meetings, and may be represented by any person selected by itself, and this person may appoint, in writing, a proxy (who shall be a member or officer of the company or partnership) to represent his corporation or partnership in his absence at any meeting of this association."

Subsequently, on May 9th, 1891, a certificate of incorporation was duly executed by five persons, each representing one of the original parties to the unincorporated association, which certificate was filed in the office of the secretary of state on May 12th, 1891, and thus the defendant corporation was created. The certificate provided for a capital stock of $200,000, divided into two thousand shares of $100 each, which were distributed as follows : to Mr. Mitchell, of the Philadelphia Rubber Works, three hundred and twenty-eight shares ; to Mr. Loewenthal, of the L. & M. Rubber Company, two hundred and nineteen shares ; to Mr. Bassett, of the Derby Rubber Company, one hundred and

sixty-eight shares; to Mr. Murray, of Murray, Whitehead & Murray, one hundred and fifty-five shares, and to Mr. Solliday, of the New Jersey Rubber Company, one hundred and thirty shares—in all, one thousand shares, amounting to one-half of the authorized capital, upon the payment of which one-half the company, by its certificate, was authorized to commence business. This distribution of stock appears to have been made in proportion to the amount of the interests of the several original parties to the unincorporated association. This certificate was filed, on the 12th of May, in the office of the secretary of state. On the 16th of May all the corporators met for organization, and by-laws were on that occasion duly adopted by the consent of all. One of these provided for six directors, who, by common consent, were to be, and in fact were, distributed among the representatives of the five original parties to the unincorporated association, one to each, except the Philadelphia company, to which, on account of its greater holdings of stock, two directors were assigned. Other by-laws were as follows :

"Section 3. Each stockholder shall be entitled to one vote for each share of stock held by him, at any election of directors, for each director to be elected, which votes he may cumulate upon one or more directors, giving to such director as many votes for each share of stock held by him as there are directors to be elected, or, at his option, give one vote to each of the persons he may desire to elect as directors, not exceeding the number to be elected. Such vote shall only be given by the stockholder in person, or, in case of his absence, by written proxy, given to and presented by a stockholder. No stock held by the company shall be voted upon."

The validity of this by-law was not questioned.

"Article 6. These by-laws may be amended, added to, altered or repealed by the affirmative vote of the stockholders representing at least two-thirds of the whole capital stock, at any annual meeting or at a special meeting called for that purpose."

After the adoption of these by-laws, the company was duly organized and the capital stock paid in, and all of the parties to the original association leased to it their respective manufacturing plants.

The allegation of the complainants is, and I think it is sustained by the clear weight of the evidence, that the provision for cumulative voting was adopted in the by-laws for the purpose of perpetuating the provision in the original articles of association, that each of the parties to it should be represented in the board of directors, and that for that reason it formed a fundamental contract between the parties. The defendants do not deny that there was an understanding among all the parties at the creation of the corporation, to the effect that each of the parties to the unincorporated association should be represented by a director in the corporation, excepting the Philadelphia company, which should have two, but they say that such understanding extended no farther than for the first year. The witness who is relied upon to sustain this allegation swears, however, that nothing was said, one way or the other, as to subsequent years, and he swears that it was understood among some of the parties that the arrangement about directors should continue as long as the original concerns continued to hold the stock subsequently subscribed for and issued to their several representatives.

But I think that the solution of this question of fact is immaterial, since the payments for stock were made, and the certificates of stock were issued, and the several manufacturing plants leased to the corporation, after, and not before, the adoption of these by-laws. They, therefore, became and were, under the circumstances, essentially a part of the contract between the stockholders, and therefore, for the reasons above stated, cannot be altered except in the manner therein provided or by the consent of all the stockholders.

On the 12th of June, 1893, at a meeting of the directors, of which the complainants were two, a resolution was passed by the other four directors, against the protests of complainants, initiating proceedings, under the section of the act of 1893 above quoted, for the avowed purpose of altering the certificate of organization in such a manner as to do away with cumulative voting. This action was restrained by an interlocutory order of this court, and I think such restraint should be made perpetual, and will so advise.

It was urged that the complainants, representing severally two of the original parties to the unincorporated association, have lost their right to representation in the board of directors by parting with the bulk of their holdings of stock. The answer to this position is, that the right to a voice in the management of the corporate enterprise inheres in the actual ownership of the shares of stock, as shown in *White* v. *The Thomas Inflatable Tire Co., 7 Dick. Ch. Rep. 178.* Each new holder of stock by transfer becomes a party to the original contract between the stockholders and entitled to all its benefits.

It was urged by the counsel of defendants, in his able and ingenious argument, that the rule of the majority is the law of the corporation and must govern; and that to hold this by-law irrepealable except by a two-thirds vote of all the stockholders, is in derogation of this law. The authority relied upon for this position is *Durfee* v. *R. R. Co., 5 Allen 230.* That case, as I read it, is in direct conflict with the line of cases in this state culminating in *Mills* v. *Central R. R. Co.,* above cited. Its reasoning is expressly repudiated by Chancellor Zabriskie, in *Zabriskie* v. *R. R. Co., 3 C. E. Gr. 178* (at *p. 190*).

The other instances cited by counsel in which the courts have held that a mere majority may repeal a by-law which contains a provision that it shall not be repealed except by a two-thirds vote, were either cases of municipal corporations, with which we have here no concern, or cases where the by-law in question was passed long after the organization of the company and where no vested rights had arisen or been acquired under it, so that no harm could be done by a change.

The practical operation of this by-law is not, as contended by defendants, to prevent a mere majority from governing, for it leaves it in the power of the majority of stockholders to elect a majority of the directors. All that it can accomplish is to prevent a majority of stockholders from electing all the directors, and to insure the minority of the stockholders a representation on the board of directors and a voice in its deliberations.

In this connection it is worthy of remark that the stockholders, as such, have no power to make any contract or execute

any work. Their power is confined to electing directors and advising them in their conduct of the business of the company. *Plaquemines Tropical Fruit Co.* v. *Buck, 7 Dick. Ch. Rep. 219.*

Complainants are entitled to costs against the individual defendants.