THOMAS MADDOCK SONS' COMPANY et al.

*v.*

ERNEST BIARDOT.

[Decided March 28th, 1913.]

1. A preliminary injunction will not be granted, on the facts of this case, restraining the defendant trustee from voting in person or by proxy and the company from receiving such vote, on ten thousand shares of stock belonging to stockholders who had paid for the same and for whom the defendant holds them in trust, as such action would work a separation of the voting power of the questioned stock from the ownership.

2. No rule of law or equity entitles the complainants in this case to divorce from the ownership of the stock the voting power which inheres in that ownership as a matter of right; at least not on any facts shown, nor any law arising upon those facts.

On application for preliminary injunction.

*Mr. Frank S. Katzenbach, Jr.,* for the complainants.

*Mr. Conover English,* for the defendant.

WALKER, CHANCELLOR.

After the organization of the "Manufacturers' Association of New Jersey," J. B. R. Smith, Esq., who was counsel for the company, subscribed for ten thousand shares of its capital stock, amounting to $100,000 par value, and paid for the same, and

certificates therefor were issued to him. He raised the money wherewith to purchase the stock by a loan on his note and hypothecated the shares as security. The payment of the note was guaranteed by A. E. Williamson, Victor Garrett, Samuel L. Moore, Milton J. Schloss, Henry Anner, Willis L. Brownell, Harry S. Maddock and D. L. Webster. Afterwards A. E. Williamson and D. L. Webster called at the bank where the note was lying under discount, paid the $100,000 and took it up, and procured, along with it, the certificates for the ten thousand shares of stock. Mr. Smith was not a party to this transaction, and, upon learning of it, filed a bill in chancery for the recovery of the capital stock. Afterwards negotiations were had between him and Messrs. Williamson and Webster and the company, which resulted in the dismissal of the bill by consent. One of the terms of settlement which, however, is at least of doubtful efficacy in this suit, was that the particular shares of stock should be put in the hands of a trustee and that this trustee should not vote it at any stockholders' meeting until it had been surrendered for value to *bona fide* subscribers who should have paid the par value of $100,000, and also $50,000 surplus called for by subscribers' agreements then in use. Another term of the settlement was that Mr. Smith should be paid $5,000 in full settlement and compromise of *every item of indebtedness or difference between him and the company.* When the loan was paid and the stock taken up it was transferred to E. B. Martin. After the settlement with Mr. Smith, who thereby parted with all interest in the stock, and who has, therefore, no interest in the subject-matter of the present suit, Messrs. Moore, Schloss, Garrett and Williamson purchased the stock from Martin in blocks of two thousand five hundred shares each, for which they each paid $37,-500, being $25,000 for each block of stock and $12,500 for the surplus account as required. Their interests being joint they afterwards transferred their stock to Ernest Biardot, who holds the same in trust for them. That they transferred their stock to Biardot is a matter which does not concern the complainants. The only question is, Does the stock belong to Messrs. Moore, Schloss, Garrett and Williamson? *Prima facie* it does. They

paid for and got it, and paid the premium required to go to the surplus account. They are the beneficial owners.

The prayer of the bill is that Biardot be enjoined from voting this stock in person or by proxy, and that the company be enjoined from receiving such vote.

The complainants rely upon a letter written to Mr. Smith by Mr. Webster, secretary of the insurance company, in its name, September 10th, 1912, in which, among other things, he says:

"In addition to the statement contained in your letter, we are willing that the stock standing in the name of E. B. Martin, namely 10,000 shares now held as collateral by the Mechanics Trust Company of New Jersey, shall be put in the hands of a trustee, and that this trustee shall not vote the stock at any stockholders' meeting until it has been surrendered for value to *bona fide* subscribers for the stock of the company who shall have paid in the par ·value of the stock and paid into the. treasury of the company the extra fifty per cent. over par value, called for by the subscription blanks now in use by the company."

This letter was sent in reply to one from Mr. Smith under date of September 7th, 1912, making his offer of settlement, which was afterwards accepted and consummated. As already remarked, he thereupon ceased to have any interest in the company or its affairs, because no longer a stockholder. Assuming that the letter of September 10th, 1912, sent by Mr. Webster in the name of the insurance company became, when accepted, a contract made by one person, Mr. Smith, in favor of other persons, Harry S. Maddock and the Thomas Maddock Sons' Company, complainants, who are stockholders of the company, and that they may sue on such contract under *P. L. 1903 p. 541 § 28*, which is doubtful (*Styles* v. *Long Company, 70 N. J. Law (41 Vr.) 301, 305*), nevertheless, it cannot be predicated of a certainty that Messrs. Moore, Schloss, Garrett and Williamson, who purchased this stock from E. B. Martin at par and paid into the treasury of the company the required premium, and who, by the way, are already stockholders and directors, are not *bona fide* holders of the stock. In view of the facts, the question is only doubtful, and to doubt is to deny. *Suydam* v. *Suydam, 79 N. J. Eq. (9 Buch.) 144* (bottom of *p. 149*).

In *Bache* v. *Central Leather Co., 78 N. J. Eq. (8 Buch.) 484*, a

controversy for the control of a corporation, in which a prelimi-
nary injunction was sought to restrain certain persons from vot-
ing certain shares of stock at a stockholders' meeting, Vice-Chan-
cellor Howell (at p. 486) said:

"I am of the opinion that it is unlawful, and a gross violation
of the public policy of this state, to permit or contract for a sepa-
ration of the voting power of corporate stock from its ownership."

The stock in controversy was issued by the company for cash at
par. The company it would seem cannot question its validity
as an outstanding issue of stock. The only complainants who
have any interest in the present controversy are stockholders, and
therefore integral parts of the company. The fifty per cent.
premium for surplus account has also been paid in. This being
so, no rule of law or equity, of which I am aware, entitles the
complainants in this case to divorce from the ownership of the
stock the voting power which inheres in that ownership as a
matter of right; at least not on any facts shown, nor any law
arising upon those facts.

The preliminary injunction prayed for must be denied, and the
order to show cause discharged and the stay therein vacated.