The sixteen complainants severally own seven thousand four hundred and thirteen shares of the common stock of P. Lorillard Company of a market value of about $120,000. They seek, interalia, to restrain the company, its officers and agents, from permitting a vote to be had at a stockholders' meeting upon a proposed amendment to the by-laws of the company and upon a resolution authorizing an issue of stock. The most important part of the amendment to the by-laws reads:
"Resolved, That Article XII of the by-laws entitled `Bonus to Officers and Employes,' be amended so as to read as follows:
"Section 1. As soon as reasonably may be after the end of the calendar year 1931, and of each calendar year of the company's existence thereafter, and under and in accordance with all the terms of this article, the treasurer of the company shall ascertain the net profits of the company for such year, and shall pay and distribute an amount of such net profits equal in the aggregate to five per cent. (5%) thereof to and among those officers and employes of the company who have both been in the employ and owned common stock of the company as hereinafter stated as an extra dividend upon and in the proportion among such officers and employes of such shares of common stock thus owned by them respectively."
Then follow definitions of "net profits" and "owned" and limitations on the number of shares on which any one officer or employe may receive the extra dividend
The first inquiry is into the authority of the corporation to take the proposed action. The company is organized under the General Corporation act of New Jersey. Comp. Stat. p. 1592. Its certificate of incorporation as amended authorizes preferred stock of the par value of $100 a share as well as common stock without nominal or par value.
The proposed revision of the bonus by-law provides in effect for the payment of dividends on a part of the common stock. These dividends would be different from usual dividends in two major particulars: The amount of each dividend, be it $100,000 or some other sum, would not be determined by the board of directors but by a mathematical calculation; the dividend would be distributed not among *Page 155 
all common stockholders but only among such as are officers and employes of the company, pro rata their stockholdings within certain limits. These limits vary for different officers and classes of employes; if the president, for instance, hold more than seven and one-half per cent. of the outstanding common stock, his part of the dividend would be calculated only on such number of shares as equal seven and one-half per cent.
Now, it is certain that in the absence of express statutory sanction, a corporation cannot, except by unanimous consent of its stockholders, make a distinction in the rate of dividends paid, among stockholders of the same class. And it cannot accomplish this result merely by denominating as "bonus" the excess dividends paid to one group of stockholders; the court will look through the form into the substance of the scheme.
The most obvious authority for the proposed action of the corporation is "An act concerning corporations of this state and the participation of their employes and those actively engaged in the conduct of their business in their stocks, profits, welfare work or management." P.L. 1920 p. 354. But the company expressly disclaims this source of authority; it has not followed the method there prescribed. Hence I need not inquire whether this by-law could be supported by the act of 1920. Counsel for the company assert that the basis for the proposed action is section 1 (VI) of the Corporation act (Comp. Stat. p. 1598), giving every corporation power "to make by-laws * * * providing for the management of its property, the regulation and government of its affairs." This section is not a sufficient basis for impairing the equality among stockholders of the same class. But counsel do not admit that this is the effect of the proposed by-law; they say the payments prescribed by it are not dividends but extra compensation for its officers and directors. I doubt whether the stockholders have jurisdiction to settle such compensation (except perhaps for directors) either by stating the amount, or by prescribing a formula whereby it may be calculated. Section 1 (VI) must be read in connection *Page 156 
with section 12: "The business of every corporation shall be managed by its directors." The stockholders may, of course, choose directors who will act in accord with their wishes; they may limit the authority of the latter pursuant to section 8 (VII) but they cannot usurp the powers of the board. Loewenthal v.Rubber Reclaiming Co., 52 N.J. Eq. 440; Plaquemines TropicalFruit Co. v. Buck, 52 N.J. Eq. 219. It should be noted that the directors have not formulated or approved the proposed by-law.
I will assume, however, that the stockholders under section 1 (VI) may vote extra compensation to officers and employes. They must exercise this power in a reasonable manner; the compensation must be a function of the employment. For instance, officers and employes might participate in a bonus in proportion to their salaries, or the length of their service with the corporation, or in accordance with the quality of their work or the results produced by them, or in some other manner related to the employment. But I do not think the participation can be determined by some factor entirely foreign to their employment, whether it be ownership in the stock of P. Lorillard Company or of some other corporation. I assume an illustration of the operation of the proposed by-law. One clerk in the company's employ receives a salary of $2,000; his work is mediocre; he has been with the company only one year; he happens to own ten thousand shares of common stock and therefore his share of the proposed bonus will be, say, $10,000. Another clerk receives likewise a salary of $2,000 and does the same class of work at an adjoining desk. He has been in the employ of the company for several years; his work is excellent, but he owns no common stock and will receive none of the bonus. Such a bonus is not compensation for services; it is a dividend upon capital.
It might be urged that the extra dividends provided by this by-law would encourage employes to buy the company's stock and, by stimulating the market, increase the price of the stock to the benefit of all stockholders. It is not the duty of the company, however, to bolster the market for the *Page 157 
company's stock. Or it might be said that encouraging officers and employes to purchase stock will tie them to the company and so promote efficiency of operations. This is a most desirable end, but it cannot be accomplished legally by the payment of extra dividends on stock held by them without first creating a special class of stock in the manner prescribed by law.Prindiville v. Johnson Higgins, 93 N.J. Law 425, is an interesting case which touches this subject.
In 1921, the stockholders adopted the by-law which it is now proposed to amend; the original by-law and the amendment are much alike. The complainants and their predecessors in title apparently acquiesced in the adoption of the by-law of 1921 and never objected to any distribution among employes pursuant to its direction. Does this acquiescence on their part prevent them from effectively objecting to the amendment? I think not. The principal difference between the two by-laws is this: Under the old by-law there is first set aside out of net profits available for common stock dividends, $1.50 a share on the outstanding common stock and seven per cent. on the surplus, and then a dividend amounting to fifteen per cent. of the balance becomes distributable among employe stockholders. Under the proposed amendment five per cent. of the entire net profits could be distributable among the officers and employes. The proposed plan gives employes and officers a larger share than the old, when earnings are less than about $5,000,000, and a smaller share when the earnings exceed that figure. Net profits during the past five years have averaged only $1,900,000 a year. No bonus under the present by-law has been payable since 1926, when $22,978 was distributed. If the amendment had been in effect during those five years, the distribution on stock of officers and employes would have been $467,870.
The conduct of the complainants in respect to the by-law of 1921 does not work an estoppel against them; it does not operate as a waiver of their general right to participate equally with other stockholders in the distribution of earnings. At most, they have consented to the by-law of 1921, *Page 158 
but they are free to object to another by-law which is more disadvantageous to them, or which they may reasonably consider so to be.
The bill of complaint does not base its main attack on the amendment to the by-law, upon the grounds above considered. It does, however, set forth the proposed by-law in full; its illegality appears on its face and provides a sufficient basis for relief. Colgate v. U.S. Leather Co., 75 N.J. Eq. 229.
Counsel for the company contend that the suit is prematurely brought; that the stockholders, if permitted to vote, may reject the plan and so the questions at issue may become academic.Grausman v. Porto Rican-American Tobacco Co., 95 N.J. Eq. 223.
It is true that the court in that case dwelt upon the possibility that the proposed plan might be rejected by the stockholders, but the court also said: "If, upon the face of the resolution, it appeared that it contemplated the commission of a fraud upon a statute of this state, as was the situation inWilliam B. Riker Son Co. v. United Drug Co., 79 N.J. Eq. 580; 82 Atl. Rep. 930; Ann. Cas. 1913 A, 1190, then, of course, a sufficient basis would have existed for the interference of a court of equity." In the Riker Case the court considered a proposed dissolution of the drug company and found that the prime purpose was not dissolution but the absorption of the company by another corporation. The chief-justice said: "The scheme in the carrying out of which the dissolution of the company is a proposed step, is a fraud upon the statute (the word is used in a legal and not a moral sense)." I have found no satisfactory definition of the term "fraud upon the statute," but I think it includes a plan to deprive stockholders of their equality by means of a by-law adopted under color of the statute. Since theGrausman Case was decided, General Investment Co. v.American Hide and Leather Co., 97 N.J. Eq. 214; 98 N.J. Eq. 326,
was heard and affirmed by the court of errors and appeals. There the suit was maintained although the bill was filed before the stockholders' meeting. The danger that dissenting stockholders incur by delay is *Page 159 
well illustrated in Windhurst v. Central Leather Co., 101 N.J. Eq. 543.
Dissentients relying, as they said, on the GrausmanCase, waited to see what action the stockholders' meeting would take. It approved an amendment to the certificate of incorporation; the amendment was filed the very next day; securities were issued thereunder, and when the bill was filed less than a month after the stockholders' meeting, the objectors found themselves barred by their laches. The bill now before the court was not filed prematurely; complainants need not wait until after the adoption of the by-law and then sue to restrain payments thereunder.
I turn to the proposed resolution authorizing the issue of stock. It reads:
"Resolved, That the resolution passed March 10th, 1925, authorizing the board of directors to sell to employes not exceeding 100,000 shares of common stock at not less than $30 per share, and the resolution passed September 7th, 1929, authorizing the board of directors to sell the employes not exceeding an additional 150,000 shares of common stock at not less than $20 per share, are hereby amended and consolidated so that in lieu of said resolutions the board of directors shall be and it is hereby authorized to issue and sell at not less than $10 per share not exceeding 250,000 shares of the common stock of this company, without nominal or par value, to such officers and employes of the company, at such times, on such terms, and in such manner and amounts as may be determined by said board at any time and from time to time.
"Resolved, further, That any contracts now existing for the sale to employes of common stock under said resolution of March 10th, 1925, may be by said board canceled or altered in conformity with the above amendment of said resolution, as said board may determine."
On the argument, counsel for the company stated that the paragraph authorizing cancellation of existing contracts would be withdrawn and not presented to the meeting, even though the restraint were vacated. The balance of the resolution requires consideration. The company disclaims P.L. 1920 p. 354, as its authority. Its counsel say that its directors have ample power under section 121 of the Corporation act and under the certificate of incorporation to issue two hundred and fifty thousand shares of stock on such terms as they may determine, but subject to the right of each stockholder *Page 160 
to his pro rata share of the new stock; that this resolution is not intended and will not have the effect of authorizing the issuance of stock but is only intended to operate as a waiver by those stockholders who vote for it, of their pre-emptive right to share in the new issue. The company is not proceeding under P.L.1926 p. 554 § 16, authorizing stockholders by a two-thirds vote to adopt a by-law waiving the pre-emptive right. The brief for the company says there is "no intent to deprive any dissenting stockholder of his pre-emptive right." "Thus the proposed revision of the resolution to sell stock is not intended to bind the entire body of stockholders, including dissentients." As I understand counsel, the effect of submitting this resolution to a vote will be the same whether a majority vote for or against it. After a vote, the situation would be this: The directors under the power given by the certificate of incorporation could authorize the issue of one hundred thousand shares of stock at $10 a share payable, say, in monthly installments. They must offer to all stockholders who have not voted for the resolution, opportunity to subscribe to their quota of the new issue; the directors may then allot to officers and employes the remaining shares to which the other stockholders would have been entitled if they had not voted for the resolution.
As I read the resolution, and the notice advising stockholders that it would be offered at their meeting, they do not bear the slightest indication that the draftsman intended the effect which counsel state. The provision for the cancellation of the old contracts certainly shows a contrary understanding of the nature of the resolution. A stockholder who has given his proxy in order that his vote may be cast in favor of the resolution, or who attends the stockholders' meeting in person and votes for it, would not dream that he was yielding up a valuable right which his fellow stockholders voting "no" would retain. I have carefully considered whether the preliminary restraint should not be modified so as to permit a recording of the votes in favor of the resolution in accordance with counsels' theory that they are mere waivers and at the same time to prevent any declaration by *Page 161 
the presiding officer that the resolution was adopted or any entry in the minutes of the company to that effect, in order to make clear that the vote had no effect except that of waiver by the individuals voting for it. This would accomplish the result which the company claims to desire, and also protect complainants. But to permit a vote in the manner suggested would be grossly unfair to stockholders recorded in the affirmative. The court, while granting relief to parties before it, must be careful not to jeopardize the rights of others who have not been heard. I conclude that the restraint should be continued.