The bill in this case was filed for the purpose of restraining the defendant from consummating a proposed plan of recapitalization. After the filing of the bill of complaint other stockholders intervened by permission of the court. *Page 215 
The defendant is a New Jersey corporation engaged in the dairy business. The stock consists of three classes: prior preferred, preferred and common. The prior preferred and common stock are owned by the Philadelphia Dairy Products Company, Inc., a Pennsylvania corporation. About forty per cent. of the preferred stock is owned by persons who are not connected with the defendant corporation or with the Philadelphia Dairy Products Company, Inc. The remaining sixty per cent. of the preferred stock is held by members of the Janssen family, who are relatives of the founder of the Janssen Dairy Corporation. The complainants and intervenors are part of the forty per cent. group.
On October 29th, 1940, a stockholders meeting was held at which the plan of recapitalization, now under attack, was approved by approximately eighty-two per cent. of the holders of the preferred stock and by 100 per cent. of the holders of the prior preferred and 100 per cent. of the holders of the common stock. The stock of the complainants was not voted at this meeting. The intervenors voted against the plan. The total number of shares held by the complainants and intervenors is about 1,379 shares or approximately fourteen per cent. of the stock issued and outstanding.
The proposed plan would necessitate an amendment of the defendant's certificate of incorporation relative to the capitalization of the company. Under the plan the prior preferred stock would be entirely eliminated. The preferred stock would be reduced to 4,000 shares as against the 10,000 shares now issued and outstanding and would thereafter be known as "first preferred." The common stock would be reduced to 8,350 shares. The Philadelphia company would then accept common stock in exchange for the present prior preferred stock which it holds and thereby, it is claimed, would accept a subordinate position. The holders of the present preferred would receive four shares of the new first preferred for each ten shares now held and would surrender their present claim for cumulative dividends which are now in arrears. The new preferred issue would have the same dividend rate of five per cent. and would be entitled to elect the same proportion of directors as at present and the new *Page 216 
preferred stock would be a first lien on the earnings of the company and on its assets in the event of liquidation. The said dividends would be cumulative from January 1st, 1941.
A few days before the said stockholders meeting, Babette Sander, a preferred stockholder, filed a bill in equity in the United States District Court for the District of New Jersey to enjoin the consummation of the plan. On October 28th, 1940, the complainants filed this bill of complaint. This court allowed the meeting to proceed but suspended the operation of the plan pending final hearing.
On December 19th, 1940, the suit in the United States District Court was dismissed on the ground that the federal court had no jurisdiction to interfere with the wishes of eighty-two per cent. of the preferred stockholders "to accept a certainty at this time of forty per cent. of a loaf rather than suffer in the future, as in the past, with no bread at all and no certainty of the time of its production." See Sander v. Janssen Dairy Corp.,36 F. Supp. 512.
At the time of the final hearing, the parties entered into a stipulation and the solicitor of the complainant then offered the testimony of one witness, Mrs. Charlotte Brandes, a complainant. Mrs. Brandes testified that she and some of her relatives and friends together held about 800 shares of preferred stock; that in the month of September, 1940, Mr. Schleichter, president of the defendant corporation, and Mr. Wiebolt, the secretary and treasurer, called upon her and asked her to turn over the stock and take in exchange four shares for each ten of the old stock. She testified that these men told her the company was in an "A-1" condition and if she and the others would assent to the new plan there might be at some future time, a possibility that the Philadelphia company would buy her new stock and that of her friends. She said she refused to agree to the plan. At the close of the examination of this witness, the complainants rested. Defendant rested without further proof.
The stipulation, above referred to, in effect set forth that the defendant was a New Jersey corporation incorporated about July 25th, 1930; that there were issued and outstanding 4,000 shares of five per cent. prior preferred of a par *Page 217 
value of $100 each, all of which was held by the Philadelphia Dairy Products Company, Inc.; 1,000 shares of five per cent. preferred of a par value of $100, 9,998 shares of which were issued and outstanding and two shares held as treasury stock; 16,000 shares of common stock of no par value, 14,000 shares of which were held by the Philadelphia Company; that the preferred stock dividends are cumulative as to both classes and that full dividends were paid on the prior preferred to and including August 1st, 1940, and that the only dividends paid on the preferred stock were one of one and a quarter per cent. in December, 1937, and another of one per cent. in September, 1940. It was further stipulated that the preferred stock is held by about sixty holders, the Janssen family controlling 5,983 shares; that the defendant's board of directors consists of thirteen, eight of whom are elected by common stockholders and five of whom are elected by the preferred stockholders, and that four of the elected officers of the defendant company are also officers of the Philadelphia company; that the proposed plan is mandatory and that there is no alternative or optional plan presented and that the plan does not contemplate the raising of any additional capital. The only votes cast against the plan amounted to 553 shares of the preferred stock. The stipulation also contains annual financial statements which disclose that the item of good will was carried on the books of the company at $1,159,302.47.
Defendant contends: (1) that the plan is within the power of the corporation under R.S. 14:11-1 which provides that corporate charters may be amended by the issuance of stock for dividends in arrears; (2) that it is not the function of a court of equity to substitute its judgment for that of the directors and stockholders of a corporation and thereby interfere with a recapitalization plan or to recommend a different plan than that adopted in the absence of fraud; (3) that the complainants have not shown fraud or gross inequity in the plan adopted.
The fundamental question here involved is whether or not the managers of the corporation have, in equity, the right to put into effect a plan which, from a purely legal standpoint, is permissible under the statute. If such a plan is inequitable *Page 218 
to the extent that it shocks the conscience of the court, this court then has the right as well as the duty to enjoin its consummation. It is more a question of fair dealing between the strong and the weak than it is a question of percentages or proportions of the votes favoring the plan.
The record of the company reveals that while the prior preferred dividends have been paid, the preferred stockholders have received only two partial dividends. These stockholders, therefore, now have a claim for accrued dividends. If, however, the proposed plan becomes effective they will lose that right. The present position of the complainants will be materially and adversely affected by the proposal to issue new shares in the ratio of four for ten.
Complainants contend that the good will shown by the financial records of the company is prima facie evidence of its value. Defendant says that the company is not bound by the records as to the value of the good will and that the real value thereof is only a fraction of the amount shown. Defendant says that the valuation of good will, appearing in the company's records, is excessive but represents good accounting practice.
The stipulation is part of defendant's case which includes the item of good will, as appeared in the defendant's records, amounting to $1,159,302.47. Against this item complainant's stock was a lien. If defendant's argument is correct it should have gone forward with proof to establish affirmatively that the good will was worth considerably less or was without value. This the defendant did not do. It rested after the close of complainants' evidence and the submission of the stipulation. When defendant argues that on the basis of the average earnings over the last ten years, "there is obviously not only no good will value whatever, but there is not even a fair return," it is treading on dangerous ground. If this be so, it convicts itself not only of keeping a false record but may also be admitting insolvency.
I conclude that complainants have made out a prima facie case showing that the proposed plan would deprive them of a very substantial right and that the defendant, not having chosen to rebut the presumption of value shown by the defendant's *Page 219 
records, is bound by them. In addition to this the plan is mandatory and lacks an essential element of justice or equity. The situation here is different from that which involves the merger or consolidation of separate companies. In such cases, dissenting minority stockholders are given the right to have the value of their shares determined by a proceeding in the Circuit Court. (R.S. 14:12-7.) There the ends of justice are served and the dissenting minority stockholders receive a fair value in return for that which they surrender at the instance of the majority stockholders. The position of the defendant might have been less assailable if some provision had been made to fairly compensate the minority for their loss under the proposed plan.
Complainants acted promptly and, for the reasons above mentioned, are entitled to the relief prayed for. LonsdaleSecurities Corp. v. International Mercantile Marine Co.,101 N.J. Eq. 554.