15 N.J. Super. 534 (1951)
83 A.2d 649
RANDLE B. FAUNCE AND E. LESTER STOCKTON, PLAINTIFFS,
v.
BOOST COMPANY, MAUDE F. FAUNCE, INDIVIDUALLY AND AS TRUSTEE-DESIGNATE UNDER THE WILL OF BENJAMIN R. FAUNCE, DECEASED, AND B. PAUL FAUNCE, DEFENDANTS.
Superior Court of New Jersey, Chancery Division.
Decided September 26, 1951.
*535 Mr. Charles A. Cohen, attorney for plaintiffs.
Mr. W. Louis Bossle, attorney for defendants.
*536 HANEMAN, J.S.C.
Plaintiffs herein seek to enjoin the consummation of a certain plan to alter the capital stock structure of the defendant Boost Company. This plan is embodied in resolutions adopted by the board of directors of the company and by the holders of more than two-thirds of the outstanding capital stock.
Defendant Boost Company was incorporated under the General Corporation Act of this State on May 15, 1915, with an authorized capital stock of 5,000 shares of the par value of $5 each. By amendment, the authority to issue such stock was increased on June 14, 1931, to 200,000 shares. Both the original stock and the stock authorized by said amendment possessed the usual voting power. No other type of stock was ever authorized by the certificate of incorporation until that contemplated by the proposed amendment to the certificate of incorporation, of which complaint is now made. There are now outstanding 5,492 1/2 shares of stock, of which 3,430 1/2 shares were owned by Benjamin R. Faunce at the time of his death on April 27, 1941. Said Benjamin R. Faunce bequeathed these shares of stock to Maude F. Faunce, his widow, in trust, to receive the dividends for life, and upon her death, directed that the stock be equally divided among his three sons, Randle, Lester and Paul.
The defendant Boost Company, at some time in the past, entered into an agreement, herein referred to as the royalty agreement, now held by the defendant Maude F. Faunce, under the terms of which she would receive 1 1/2 shares of stock for every share of stock issued to others. The consideration for this agreement was the assignment to the corporation of an alleged secret formula developed by said Benjamin R. Faunce.
It was apparently conceived by the stockholders that this agreement retarded or prevented the obtaining of additional capital which they required for expansion. Maude F. Faunce thereupon proposed to surrender the royalty agreement provided the corporate capital structure was so altered that there would be in existence two classes of stock, respectively designated *537 Class A common stock and Class B common stock, the Class A 15,000 shares without any voting power prior to dissolution of the company, and to be issued share for share in exchange for the stock now outstanding. Class B stock alone, until the event of dissolution, was to possess the voting power, and the entire authorized issue of 100 shares of Class B stock was to be given to Maude F. Faunce in exchange for the cancellation of the royalty agreement. Class B stock would not be entitled to share in any of the profits of the corporation nor, it would seem, in the assets upon dissolution.
At the time of the stockholders' meeting held to consider the adoption of the proposed amendment to the certificate of incorporation, Maude F. Faunce voted the stock held by her as trustee, and some additional stock held individually by her, and together with some other stockholders, 4,669 1/2 shares were voted in favor of the amendment. The plaintiffs and several other stockholders whose holdings totaled 512 shares voted against the adoption.
The sole question involved is the power of the holders of two-thirds of the stock to so change the capital structure as to take away from the plaintiffs their right to vote, which was granted to them by their initial purchase of the stock.
It must be conceded at the outset that under R.S. 14:8-1 the power and authority existed under the original incorporation to create stock "with full, limited or no voting powers." Under R.S. 14:11-1 et seq., upon the adoption of a resolution by the board of directors seeking an amendment of the certificate of incorporation, and a two-thirds vote of each class of stockholders, the certificate of incorporation could be amended in a number of particulars, as specifically set forth in said section. However, there is no specific provision which permits a change of common stock with voting powers to a common stock with no voting powers. Defendants point to paragraph "r" of said section as their authority. This section reads as follows: "Make such other amendment, change or alteration as may be desired."
*538 The certificate of incorporation, constitution and bylaws of the corporation constitute a contract between the corporation and its stockholders and the stockholders inter sese. Leeds v. Harrison, 7 N.J. Super. 558, 72 A.2d 371 (Ch. 1950), and cases there cited. See also Loewenthal v. Rubber Reclaiming Co., 52 N.J. Eq. 440, 28 A. 454 (Ch. 1894).
Defendants argue that the statutory law in effect at the date of the formation of the corporation becomes a part of its charter, whether specifically referred to therein or not, and hence a part of said contract. This must be conceded. See General Investment Co. v. American Hide & Leather Co., 97 N.J. Eq. 214, 127 A. 529 (Ch. 1925), affirmed 98 N.J. Eq. 326, 129 A. 244 (E. & A. 1925).
Defendants as well contend that since at the time of incorporation and when the stock held by the present stockholders was originally issued, the statute was, to all intents and purposes, as it is now found, the permission to amend in the manner they now seek to amend was implicit in the contract of the stockholders.
The permission so granted by the statute to amend should not be so exercised as to impair the contractual rights of the objecting stockholders.
In Group No. 23, &c., v. Assn. Sons of Poland, 121 N.J. Eq. 102, 187 A. 356 (E. & A. 1936), the court said as follows:
"The permission so granted should not be exercised if it will impair the rights of defendant's objecting members. When complainants became members of the defendant and accepted its certificate of insurance, a reciprocal relation arose between complainants and defendant on the one hand and between complainants and their fellow members on the other hand. Defendant's certificate of incorporation, its constitution and by-laws, the payment thereunder of dues or assessments by complainants for the issuance of death benefit certificates, created a contractual relation or status whereby the parties thereto were bound to deal with each other equitably and to refrain from any act which would impair the relationship into which they had mutually agreed to enter. * * * In associating together under defendant's charter, defendant's members became bound in equity to refrain from combining together and, by a majority vote over the objection of a substantial minority, take advantage of permissive *539 legislation to merge, if thereby a material change would result in the enterprise in which all had mutually agreed to embark and the contracts or status of the minority would be impaired. Zabriskie v. Hackensack, &c., Railroad Co., 18 N.J. Eq. 178; Black v. Delaware and Raritan Canal Co., 24 N.J. Eq. 455; Schwarzwaelder v. German, &c., Insurance Co., supra; Colgate v. United States Leather Co., supra; Wm. B. Riker & Son Co. v. United Drug Co., supra; Allen v. Francisco Sugar Co., 92 N.J. Eq. 431."
In Zabriskie v. Hackensack & N.Y. Railroad Co., 18 N.J. Eq. 178 (Ch. 1867), the court said as follows:
"Again, the power of the legislature has its limits. It can repeal or suspend the charter; it can alter or modify it; it can take away the charter; but it cannot impose a new one, and oblige the stockholders to accept it. It can alter or modify the old one; but power to alter or modify anything can never be held to imply a power to substitute a thing entirely different. It is not the meaning of the words in their usually received sense. Power to alter a mansionhouse would never be construed to mean a power to tear down all but the back kitchen and front piazza, and build one three times as large in its place. In anything altered, something must be preserved to keep up its identity; and a matter of the same kind, wholly or chiefly new, substituted for another, is not an alteration; it is a change."
The right to vote was a basic contractual right. It was an incident to membership or of the property in the stock, of which the stockholder or member cannot be deprived without his consent. 5 Fletcher on Corporations, p. 99; Maddock, &c., Co. v. Biardot, 81 N.J. Eq. 233, 87 A. 66 (Ch. 1913); Cone v. Russell & Mason, 48 N.J. Eq. 208, 21 A. 847 (Ch. 1891); White v. Thomas Inflatable Tire Co., 52 N.J. Eq. 178, 28 A. 75 (Ch. 1893); Chapman v. Bates, 61 N.J. Eq. 658 (E. & A. 1900); Grausman v. Porto Rican-Am. Tobacco Co., 95 N.J. Eq. 155, 121 A. 895 (Ch. 1923).
There is nothing in the statute as it existed at the time the stock was issued that could be read into a contract which would permit the contemplated action. Paragraph "r" must be read with an unwritten understanding that such change would not be violative of constitutional guarantees. No specific section of R.S. 14:11-1 permits a majority to *540 disfranchise the minority. Implicit in the original contract was the understanding that each common stockholder would have the right and privilege to a voice in the management and conduct of the affairs of the corporation. The newly authorized Class B issue of stock sub judice creates no interest in the capital assets or the earned profits of the corporation. The fact that the present holder is also the owner of Class A stock is a happenstance. It is conceivable that in the future these ownerships may be separated and we might then have the management and conduct of the business in the hands of one having no financial interest in the corporation. The attempt here to divorce the plaintiffs from their right to vote is violative of their constitutional guarantee against the impairment of contracts.
In any event, the plan is inequitable to the plaintiffs. In Kamena v. Janssen Dairy Corp., 133 N.J. Eq. 214, 31 A.2d 200 (Ch. 1943), affirmed 134 N.J. Eq. 359, 35 A.2d 894 (E. & A. 1943), the court said, at page 217:
"The fundamental question here involved is whether or not the managers of the corporation have, in equity, the right to put into effect a plan which, from a purely legal standpoint, is permissible under the statute. If such a plan is inequitable to the extent that it shocks the conscience of the court, this court then has the right as well as the duty to enjoin its consummation. It is more a question of fair dealing between the strong and the weak than it is a question of percentages or proportions of the votes favoring the plan."
Judgment will be entered accordingly for the plaintiffs.