ALFRED REED and SYDNEY L. WRIGHT, receivers of the New Jersey and Pennsylvania Traction Company, appellants,

*v.*

THE INHABITANTS OF THE CITY OF TRENTON, respondents.

[Argued June 26th, 1912.   Decided November 18th, 1912.]

1. Where a traction company, organized under the statute of this state contracted with a municipal body in the form of an acceptance of an ordinance, passed by a municipal body, granting permission to such company to maintain and operate its railroad, conditioned that certain specified rates of fare should be charged for transportation of passengers —*Held*, that where there were no express words in the ordinance, indicating that the parties were contracting for any other corporation, the inference is that the parties intended to bind themselves only, and not other parties, and that the obligation of the company was to carry passengers over its own lines, for the stipulated fare, and not over the lines of another company.

2. The contract of a stockholder, made in his own name, is not binding upon a corporation, the stock of which he owns and controls.

3. A practical construction of a contract becomes evidential only when the writing is ambiguous, and where it appears that the acts done under it were those of the very parties thereto, and were done in pursuance and by reason of it.

On appeal from a decree advised by Vice-Chancellor Walker, whose conclusions are as follows:

"WALKER, V. C.

"The bill is filed to restrain the mayor of the city of Trenton from revoking the license of car No. 7 of the New Jersey and Pennsylvania Traction Company, and from stopping the operation of that car upon the company's line of railway within the limits of the city of Trenton. The pertinent facts underlying the controversy are these: The common council of Trenton passed an ordinance, which was approved on December 31st, 1902, authorizing the traction company to construct and operate a street railway on Calhoun and West Hanover streets, in Trenton.

This ordinance, conferring certain rights and imposing certain limitations upon the company, required that, as a condition precedent to the enjoyment of the privileges granted, the company should file with the city clerk of Trenton a contract, wherein it would covenant with the city to abide by and fully perform all the matters and things in the ordinance contained on its part to be observed, kept and performed. Such contract was duly executed and filed.

"The sixth section of the ordinance under consideration is as follows:

" 'The rate of fare within the present limits of the City of Trenton for each passenger shall be three cents, and outside of the city limits, within a radius of five miles, five cents, and shall entitle the passengers to one continuous ride in the same general direction, and each passenger shall be entitled to one transfer ticket for passage to another line of said company at all points of intersection of other routes, if such transfer be necessary to enable him to continue to his destination; any child under five years of age, accompanied by a parent, guardian or other person paying fare, shall be carried free; the mayor is hereby empowered to revoke the license of any car which is not run in accordance with this section.'

"The line of the traction company extends from its terminus, on West Hanover street, in the city of Trenton, westwardly, to the raceway of the Trenton Water Power Company's canal. At that point the traction company connects with a track laid by the Trenton City Bridge Company across the bridge over the Delaware river, between Trenton and Morrisville, in the State of Pennsylvania. This track in turn goes to the tracks of the Yardley, Morrisville and Trenton Street Railway Company, which run from Morrisville to Yardley, in the State of Pennsylvania. These companies are and always have been owned and controlled by the same interests.

"When continuous traffic from Trenton to Yardley by the same car running from one terminus to the other was established the rate of a single fare for the whole distance was fixed by the three companies at five cents, and was so continued for years and until February, 1902, when the rate was increased to ten cents.

"Yardley is within a radius of five miles from the traction company's terminus on West Hanover street, in Trenton, and the

claim of the city is that the raising of the fare to ten cents was a plain violation of the limitation in that behalf contained in the ordinance which was accepted by the traction company in the agreement executed with the city, and that therefore the mayor had a right to revoke the license of the car on which the excessive fare was charged, and that no injunction should be allowed.

"It may be, as was said upon the argument, that the traction company cannot afford to carry passengers from Trenton to Yardley for five cents; that that rate of fare heretofore charged has proved well nigh ruinous to the company, and that it cannot continue to exist under such hard conditions. But this, in the language of Mr. Justice Swayze, in *Stockley* v. *Perry, 26 N. J. L. J. S*, 'may be a very good reason why a man should not make such a contract, but it is no reason why the courts should refuse to enforce the contract when made;' and, as I said, in *Poole* v. *Supreme Circle* (memorandum recently filed), 'the plea of necessity is never, as I understand it, a valid defence against the performance of a contract.'

"The power of the city to impose the terms and conditions in the ordinance contained is undoubted, and the issue therefore narrows itself to one of construction only, and the question is: Does the ordinance permit the charge of a fare of three cents within the city limits, namely, from the terminus, on West Hanover street, to the raceway of the water power company's canal, and an additional five cents within a radius of five miles from the last-named point or city limits; or does it mean that the distance of five miles is to be measured from the terminus in Trenton to a point outside of the city limits?

"In my judgment, the question propounded should be answered in favor of the city's contention. In aid of this construction comes the clause immediately succeeding that limiting the rate of fare, which says that each passenger shall be entitled to one transfer ticket for passage to another line of the company at all points of intersection of other routes if such transfer be necessary to enable him to continue to his destination. Although it is a fact that at the time when the ordinance was approved the traction company's railway did not connect with the line running over the Delaware river bridge, as the line was not then built,

nevertheless, the building of that railway was in contemplation, else the language

'shall entitle the passenger to one continuous ride in the same general direction and each passenger shall be entitled to one transfer ticket for passage to another line of said company at all points of intersection of other routes, if such transfer be necessary to enable him to continue to his destination,'

would have been meaningless. These provisions are all in the same section, and are in the conjunctive. Besides, the construction contended for by the city is one that the company itself adopted and acted upon for years, and the court may lay hold of this practical construction given to the ordinance and contract by the parties in deciding this question. The court is willing to believe that the words mean what the traction company, by its actions, has said they mean.

"The views above expressed lead to the dismissal of the bill and consequent dissolution of the injunction."

*Mr. Frank S. Katzenbach, Jr.*, for the appellants.

*Mr. Charles E. Bird* and *Mr. Charles H. English*, for the respondents.

The opinion of the court was delivered by

VOORHEES, J.

This appeal reviews a decree of the court of chancery dismissing an injunction bill, thereby terminating the preliminary injunction which had issued thereon. The facts are fully and accurately set out in the conclusions written for the court of chancery by the present chancellor.

That a municipality, as a condition precedent to granting permission to a traction company to construct and operate a street railway within its corporate limits has power to impose lawful restrictions, in the interest of the public, that regulations of rates of fare are properly classed among such restrictions and come within the terms of the statute, and that the acceptance

of such an ordinance by the company constitutes a contract are too well settled to require discussion. The contract thus entered into is evidenced by the terms of the ordinance and is to be construed by the ordinary rules of law applicable to that subject.

The contract before us for construction is found in the sixth section of the ordinance and is set out in full in the opinion written for the court of chancery. The traction company was a New Jersey corporation whose operations were confined by law to this state. It could have no lines without this state. There is no expression, even intimating that the parties were contracting for any other corporation. The inference is that they lawfully contracted for, and in the absence of express words to the contrary, that they intended to bind themselves only and not other parties. The obligation of the traction company was to carry passengers over its own lines for the stipulated fare, not over the lines of another company. The rates were clearly expressed to be three cents within the city of Trenton, and five cents outside of the city limits, within a five-mile radius. If the city had intended to bind the New Jersey corporation to pay toll, across a bridge of another corporation, which is quite distinct from a rate of fare, and to bear the charge of a foreign corporation for transportation over its lines, it should have used apt words to express that meaning. The contract, upon its face, does not so state, and the presumption is to the contrary.

The traction company, subsequently to the passage of the ordinance, became the owner of the stock of the Pennsylvania corporation and of the bridge company. The ownership of the stock of the other companies by the New Jersey corporation does not alter this presumption, even if such control had been vested in the New Jersey corporation at the time of entering into the contract. *A fortiori* it must be without significance or bearing, when such control had not then been acquired. The contract of a stockholder, made in his own name, is not binding upon a corporation, the stock of which he owns and controls. *Clement* v. *Young McShea Amusement Co., 70 N. J. Eq., (4 Robb.) 677; Thomp. Corp. (2d ed.)* § *1386.*

The transfers which the company obligated itself to give are in express terms limited "for passage to another line of said com-

pany," and the words "continuous ride in the same general direction" must be construed to mean a journey upon and over the company's own tracks.

It has not been shown that the fixing of fare between Trenton and Yardley, by the joint action of the three corporations, was by reason of the language of the contract, and because that agreement was binding upon all the companies. Hence, the effect of this joint action would not amount to a practical construction of the ordinance.

A practical construction of a contract becomes evidential only when the writing is ambiguous, and where it appears that the acts done under it were those of the very parties thereto, and were done in pursuance and by reason of it. *Rogers* v. *Colt, 21 N. J. Law (1 Zab.) 704; Stewart ads. Lehigh Valley Railroad Co., 87 N. J. Law (8 Vr.) 53; United Boxboard and Paper Co.* v. *McEwan Brothers Co., 76 Atl. Rep. 550; McMillin* v. *Titus, 222 Pa. 500; Sternbergh* v. *Brock; 225 Pa. 279.*

We, therefore, conclude that the contract was wholly between the New Jersey corporation and the city, that it had reference to the lines of that company only, and did not obligate the New Jersey company to procure transportation over the lines or property of either of the other companies, and that the action of the mayor, in revoking and annulling the car licenses, under the power for that purpose, conferred upon him by the ordinance, because, to quote the language used by him in his order or revocation,

"'the rate of fare charged by said company for the transportation of passengers on said cars between the City of Trenton and the Borough of Yardley aforesaid (the said Borough of Yardley lying and being outside of the city limits, within a radius of five miles), is the sum of ten cents, being an amount in excess of the fare which by the terms of said section of said ordinance of said Company is authorized and permitted to charge for the transportation of passengers for a continuous ride within said radius,"

was not warranted.

The order appealed from will be reversed and the bill restored to the files, and the preliminary injunction continued.

*For affirmance*—TRENCHARD, KALISCH, WHITE—3.

*For reversal*—THE CHIEF-JUSTICE, GARRISON, SWAYZE, BER-GEN, VOORHEES, MINTURN, BOGERT, VREDENBURGH, CONGDON,. TREACY—10.