The complainant is the daughter of Elizabeth T. Wright, late of the borough of Westwood, Bergen county, New Jersey, who died December 15th, 1932, leaving a last will and testament, which was probated December 31st, 1932, before the surrogate of Bergen county. The will named the complainant and her brother, Harold Taft Wright, executrix and executor, and they both qualified as such. The second paragraph of the will is as follows:
"Second: I give and devise to my son, Harold Taft Wright, his heirs and assigns forever, the house and plot owned by me, situated on the north side of Lincoln Avenue, Westwood, New Jersey, provided that my said son, Harold Taft Wright, his heirs, executors and assigns, shall pay within a period of one year after my death, the sum of Four Thousand ($4,000) Dollars to my daughter, Mildred E. Olsen, which legacy I do hereby charge upon the said realty devised in this item to my son, Harold Taft Wright. I am making this provision because it is my desire that my son shall have a home and I have provided for the payment of the legacy to my daughter so that she will have what I consider her fair share in lieu of an interest in the property.
"In the event my said daughter, Mildred E. Olsen, shall predecease me or in the event we both die by reason of the same accident or at the same time, then in either of said events, I give and devise to my said son, Harold Taft Wright, his heirs and assigns forever the said house and plot, free from any charge or legacy whatsoever."
The complainant alleges that the property mentioned in the second paragraph of the will has been occupied by the defendant Harold Taft Wright, since December 15th, 1932, during all of which period he has refused to account for any rent for the use and occupancy of the premises. She further alleges that he refused to co-operate with her and file an inventory of the estate, or take an accounting of receipts and disbursements or distribute and pay over to her the bequest made to her in the second paragraph of the said will. The bill further says that on December 12th, 1933, a judgment was entered against the defendant Harold Taft Wright, in the district court of the fifth judicial district of the county of Bergen, by Le Roy Dreeger, which was subsequently docketed in the Bergen county court of common pleas on *Page 105 
December 14th, 1933; and that execution was issued thereon out of the said last mentioned court on December 22d 1933, under which the sheriff of the county of Bergen sold the said premises to the defendant Ruth Crankshaw.
But two witnesses testified at the hearing, namely, the complainant and Walter E. Hudson, a realtor produced by the complainant; the last named testified as to rental and realty values.
The complainant contends that the defendant Harold Taft Wright in effect, accepted the bequest in his mother's will. The complainant, in testifying, said that she and her brother after the will was probated "proceeded to divide up the estate so far as it was possible. We divided everything in half but that part about the house." She related a conversation she had with the defendant Harold in which she said, "I asked him what about the taxes — what was he going to do about them. He said, `what taxes?' and I said, `on your house.' He said, `I don't own any house. I will not pay any taxes.' He said, `my mother only left me a debt.' I said, `well, if you are not going to pay the taxes and don't want the house you are a tenant, and you should pay rent,' and he refused. He said, `I will pay no rent. I will move first.'" That conversation she testified took place April 18th, 1933. She further testified, on cross-examination, as follows:
"Q. Your mother died in December of 1932? A. Yes, sir.
Q. Now, you spoke of the week of the moratorium. You mean the week of March 4th, 1933, don't you? A. Yes.
Q. And is that the first time that you talked with your brother regarding the house? A. No.
Q. You say he had refused the house. A. Yes.
Q. He took the position that he didn't want the house, didn't he? A. Yes.
Q. That the house wasn't worth $4,000 to him. A. Yes.
Q. Then later on you put the house in a real estate agent's hands for sale. A. Yes.
Q. That was in April of 1933. A. 1933.
Q. That was after talking with your brother? A. Yes.
Q. There wasn't any doubt in your mind that your brother didn't want the house. A. No. *Page 106 
 Q. In fact he didn't have the $4,000 to pay for it? A. I couldn't tell you that. I don't know anything about his personal affairs. He received what I received."
There is no evidence whatever to indicate that the defendant accepted the devise; on the other hand the testimony of the complaining witness shows that he refused to accept it. A beneficiary under a will may refuse to accept a devise or legacy, and consequently no transfer of title from the estate to the beneficiary takes place. In re Howe, 112 N.J. Eq. 17.
A donee is not obliged to accept the bequest. In Hoffman v.Friend, 92 N.J. Eq. 60, Vice-Chancellor Stevenson said:
"That a testator may make a gift of real or personal property, or both, with an express provision that the acceptance of the gift shall impose a personal obligation upon the donee to pay money, or do anything else for the benefit of a third party, cannot, I think, be questioned. This is a common instance to which the equitable doctrine of election is applied. The donee is not required to accept; no duty is cast upon him; he is left to act voluntarily either in rejecting the gift with its personal burden or accepting the gift and assuming the personal burden."Bird v. Hawkins, 58 N.J. Eq. 229.
There is a presumption that the legatee or devisee accepts the gift or devise, but such presumption does not prevail in the face of evidence to the contrary.
"It is true that there is a presumption of acceptance by a donee of a gift which is beneficial to him. Yawger's Ex'r v.Yawger, 37 N.J. Eq. 216; 40 Cyc. 1893, and such a presumption is based on common sense. * * * Nevertheless that presumption is not a conclusive presumption. It may be rebutted by proof showing a refusal to accept. * * * No objection can be made to a rule of law which presumes acceptance unless satisfactory proof of non-acceptance be made. Such a rule is not only based on reason, but it is necessary in order that the facts of ownership and title to property, both real and personal, shall not be involved in continual doubt and uncertainty. But a rule of law which would presume acceptance in the face of incontrovertible proof that there was no acceptance, would assuredly be the *Page 107 
reverse of rational, and seems neither necessary nor advisable. It would in fact be nothing more nor less than an exercise by the court for the benefit of the donee, of that right of election which the court says can be exercised only by the donee personally." In re Howe, supra.
The case last cited also recites:
"That if such donee, having the opportunity to accept or reject such gift, fails to reject it within a reasonable time, he must be deemed to have accepted it. The title to property cannot be left uncertain indefinitely; the law does not require that acceptance be evidenced by any positive act."
Therefore, applying the above expressed principles to the instant case, it is quite clear that the defendant Harold Taft Wright did not accept the devise mentioned in paragraph 2 of his mother's will. Then, that being so, what becomes of the realty mentioned in said paragraph 2 of testator's will? The situation is somewhat similar to that discussed by Vice-Chancellor Fielder in Mahaney v. Mahaney, Jr., 91 N.J. Eq. 473, wherein he said:
"Cornelius, Jr., answered claiming that he was not bound to accept the devise and pay the legacies and he joins in the prayer for a partition of the lands. It is his theory that the result of his refusal to accept the devise, is that the testator died intestate as to the house and lot and that the three sons became seized thereof as heirs-at-law, as tenants in common.
"I think there can be no doubt but that under the will, Cornelius, Jr., would take an estate in fee in the house and lot, subject to the charge of the legacies to his brothers. It is not necessary to consider whether by his written renunciation he could divest himself of title; neither is it necessary to consider the question whether he is not now barred from setting up a claim adverse to the will because he accepted a bequest of personalty under it, for the reason that I consider the legacies to his brothers as equitable liens on the real estate in whomsoever the title may be, which Cornelius, Jr., cannot defeat by any act of his. I must give effect to the testator's plain intention that Andrew and William should first be paid $1,000 each out of the house and lot before Cornelius could take anything. The most that can be said of the latter's *Page 108 
refusal to accept the devise is that it will relieve him of personal liability for the payment of the legacies."
The defendant Harold Taft Wright has relieved himself of the obligation of paying his sister the sum of $4,000; but she has a lien for that amount upon the house. The declination of the defendant Harold Taft Wright in no way affects her claim for the amount of the legacy against the real property. "The lien of the legatee should be foreclosed by sale of the land." Mahaney v.Mahaney, Jr., supra. I shall hold that the complainant's legacy was payable within one year after the probate of the will, and interest will run thereon from one year after the testator's death. The defendant Wright under the circumstances, became seized of a one-half interest in the premises, as a tenant in common; but that interest was sold by the sheriff to the defendant Ruth Crankshaw. Certainly, since the interest of Harold T. Wright was disposed of through the sheriff's sale, and he was divested of an interest in the premises, and he continued to occupy the premises, he is, consequently, chargeable with the use and occupancy thereof since his divestiture.
I shall advise a decree that the premises be sold under the direction of a special master to raise and pay in the first instance the aforesaid legacy of $4,000 with interest, and if there should be any surplus, that it be equally divided — one share thereof to be paid to the complainant, and the balance to those retaining an interest in the title. This court has complete jurisdiction in the instant case and it is quite properly here. Therefore, in the matter of the prayer for an accounting, and for the other relief sought in the bill of complaint, I shall advise an order as prayed for. *Page 109