John D'Arcangelo died in 1943, leaving a last will and testament by which he gave to his sons Samuel and Gilbert *Page 65 
"all my interest in the jitney bus business that I am now conducting on the South Orange line, and I hereby order that they engage my brother Federico D'Arcangelo as one of the drivers of said jitney bus and pay him a salary of Fifty ($50.00) Dollars per week, until he is able to work, and should he be unable to work, either by reason of sickness or old age, I hereby direct that they pay him the sum of Twenty ($20.00) Dollars per week, as a pension for and during his natural life."
The residue of his estate he gave one-half to his two sons and the other half to his wife. After testator had made his will, another child, Ronald, was born.
By force of the statute, R.S. 3:2-16, Ronald takes the same share of the estate as if his father had died intestate since the will neither provides for him nor disinherits him. The jitney business and the residuary estate, real and personal, are to be treated separately as if each class of property were the only property disposed of by the will. Lutjen v. Lutjen, 63 N.J. Eq. 391,
reversed on another point, 64 N.J. Eq. 773. If decedent had been intestate, his widow would have had dower for the term of her natural life of one-half of the land. R.S.3:37-1. Subject to dower, the real estate would have descended to the three children in equal shares. R.S. 3:3-2. Ronald therefore inherits a one-third interest in his father's lands, subject to the dower of his mother. Vice-Chancellor Emery suggested that the widow holds the dower as a legal estate for the purposes of the will, that is, for the benefit of the residuary devisees including herself. In re Miner, 65 N.J. Eq. 116.
I think the pecularities of dower may be disregarded, and we may consider that in addition to two-thirds of the fee, the will disposes effectively of an ordinary life estate extending to one-half of Ronald's share. Mrs. D'Arcangelo takes as devisee one-third of the land in fee and a life estate in one-twelfth. Samuel and Gilbert take the remaining third in fee and an estate for the life of their mother in one-twelfth.
If the late Mr. D'Arcangelo had died intestate, his widow would have been entitled to one-third of the personalty and the three children would have taken the other two-thirds. *Page 66 R.S. 3:5-2. So Ronald takes two-ninths of the residuary personalty; Mrs. D'Arcangelo is legatee of seven-eighteenths, and Samuel and Gilbert, seven-eighteenths.
The jitney bus business, mentioned in the will, was owned at the date of the will, and is still owned, by the D'Arcangelo Bus Company, a corporation of New Jersey. Out of a total capital stock of twenty shares, testator held eighteen shares, his widow one share, and his brother Federico one share. There can be no doubt of testator's meaning in bequeathing "all my interest" in the business. This is a specific legacy of the eighteen shares of stock. Ronald is entitled to two-ninths, or four shares, as if his father had died intestate, that is, entirely free of the provisions in favor of Federico; while the remaining fourteen shares pass to Samuel and Gilbert, subject to the burden of these provisions.
While the clause relating to the employment of Federico is very similar to the clause concerning his pension, the effect of the two clauses is entirely different. The pension may be considered as an annuity, a legacy payable in installments. But the direction to employ Federico at $50 a week, does not provide for a legacy in any sense, since the money is to be paid for services to be rendered. Testator doubtless believed that the arrangement would be advantageous to Federico, and in addition that Federico's services as a bus driver would be beneficial to the corporation and to his sons. Again, the pension can be paid by Samuel and Gilbert individually, but they cannot directly employ Federico as one of the drivers, since they do not own the business. Testator's direction that they engage Federico can have no effect unless it be to impose an obligation on his two sons, as stockholders, to bring it about, that the corporation shall employ Federico. If testator had been the sole owner of the corporation and all the capital stock had devolved on Samuel and Gilbert, subject to the direction that they engage Federico, I take it that the direction would have been effective and enforceable. Latorraca v. Latorraca, 132 N.J. Eq. 40; 133 N.J. Eq. 298.
But Samuel and Gilbert are given only fourteen shares out of twenty shares outstanding.
A contract by the two sons, acting by virtue of their ownership *Page 67 
of a majority of the outstanding stock, with Federico, would not bind the corporation, since our Corporation Law gives to the board of directors the power and duty of managing the business of the corporation. R.S. 14:7-1. Clement v. Young, c., 70 N.J. Eq. 677; Reed v. Trenton, 80 N.J. Eq. 503. In order to reach the conclusion that the testamentary clause which is under consideration is enforceable, I would have to hold that it imposes a continuing obligation on Samuel and Gilbert to vote for directors who will promise to engage Federico at the stated salary, whether or not the directors deem his employment to be advantageous to the corporation. Such an obligation, whether created by will or contract, is contrary to public policy, and therefore it cannot be enforced.
In general, there is no fiduciary relation among stockholders. Those who hold a majority of the stock can vote as their own interest dictates, without regard to the conflicting interest of the minority. Colgate v. U.S. Leather Co., 73 N.J. Eq. 72, 87;75 N.J. Eq. 229. However, in the absence of statute, "it is unlawful and a gross violation of the public policy of this state to permit or contract for a separation of the voting power of corporate stock from its ownership." Bache v. Central LeatherCo., 78 N.J. Eq. 484; Maddock v. Biardt, 81 N.J. Eq. 233; Cone
v. Russell, 48 N.J. Eq. 208. The testamentary plan conflicts with this canon, since it restricts and makes conditional the voting power. Again, there is a fiduciary relation between the directors and the stockholders, not the majority stockholders only, or the minority, but all the stockholders. Colgate v.U.S. Leather Co., supra; Whitfield v. Kern, 122 N.J. Eq. 332.
Directors should be impartial. They should manage the affairs of the corporation in such manner as they believe will benefit the corporation as an institution and the stockholders collectively. This duty the directors of D'Arcangelo Bus Company cannot perform, if they are required willy nilly to employ Federico in order to satisfy a personal obligation of the majority stockholders. Let me add that there is no suggestion that it would be unwise or improper for the directors to engage him. They are at liberty to do so. *Page 68 
Counsel have called to my attention an interesting article by Professor Scott on Testamentary Directions to Employ, 41 Harv.L.R. 709.
The will directs testator's two sons to pay their uncle Federico $20 a week as a pension "should he be unable to work either by reason of sickness or old age." It is obvious that testator desired that his brother should be supported by them if occasion required. The phrase quoted does not relate solely to the condition of Federico at testator's death, but means that if then, or any time thereafter, he should be unable to work, the pension would start at testator's death or when Federico's disability begins. The defendants suggest that the direction to pay the pension is only precatory — the expression of testator's hope or wish. I cannot agree. The words "I hereby direct them to pay" are positive, mandatory.
Quite likely testator assumed that the bus corporation would pay the pension, but this is not what he provided in his will, and if he had done so, the provision would have been inoperative for the same reasons stated with reference to the employment. The direction for payment is addressed to his two sons, to whom is given the stock in the corporation. The court should, if possible, give effect to all the provisions of a will, and should consider the pension as a personal obligation of the sons, or as a legacy, and not as an invalid attempt to charge the corporation. To Samuel and Gilbert, therefore, rather than to the corporation, Federico must look.
Where real estate is devised to a person who is directed to pay a legacy, the legacy is an equitable charge upon the devise unless a contrary intention is expressed in the will or can be fairly implied from its provisions. Schanck v. Arrowsmith,9 N.J. Eq. 314; Wyckoff v. Wyckoff, 48 N.J. Eq. 113; 49 N.J. Eq. 344.
The same rule applies upon a gift of personalty to a person who is directed to make a payment to another. A charge is implied. But, in my opinion, the charge in favor of Federico does not extend to the residuary estate. In the will, Federico's annuity is coupled with the gift of the bus business, while the residue is a separate gift, entirely independent. The annuity or pension is a charge upon, and payable out of, the bus shares. *Page 69 
Where an annuity is payable out of the general assets or where it is payable out of a special fund which, upon the death of the annuitant, shall fall into the residuary estate, generally the annuitant is entitled to his full annuity even though the income from the estate or from the fund is insufficient. He may resort to corpus, if necessary. But where the fund or the property from which the annuity is payable, is given as a separate and independent gift and not as a part of the residuary estate, courts are inclined to hold that it was the intention of the testator that the annuitant can look to income only and that the principal fund shall go in its entirety to the person named.Stephans Executors v. Milnor, 24 N.J. Eq. 355; Merritt v.Merritt, 48 N.J. Eq. 1; Byrne v. Byrne, 123 N.J. Eq. 6, 15;124 N.J. Eq. 273. In the case before me, the bus business had been testator's livelihood. He left the business to his only children, his two sons, who were both infants at the date of the will. That he expected them to retain and operate it, appears from the direction to employ Federico. He did no anticipate or intend that the annuity of his brother would eat into and perhaps consume the gift to his children. I find that the annuity is limited to the income from the fourteen shares of stock. If the income proves insufficient, Federico must bear the loss.
The statute under which Ronald takes part of the estate, provides that towards raising the share of the after-born child, the legatees shall contribute proportionately. The proportionate contribution of Samuel and Gilbert is four shares of stock. Federico makes his contribution by submitting to an abatement of his annuity, so that it shall be $15.56 weekly instead of $20. Ronald gets the benefit, since he has the four shares, free of the annuity. *Page 70