T.C. Memo. 1996-491


UNITED STATES TAX COURT


ESTATE OF CATHERINE E. DOWELL, DECEASED,
PATRICIA LOW, EXECUTRIX, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 16019-94.                    Filed October 30, 1996.


<u>Joel L. Shoobe</u>, for petitioner.

<u>Albert G. Kobylarz</u> and <u>Richard E. Buchbinder</u>, for
respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION

VASQUEZ, <u>Judge</u>:  Respondent determined a deficiency of
$127,304 in petitioner's Federal estate tax.  Respondent filed an
amended answer asserting an additional deficiency of $61,532.

Catherine E. Dowell (sometimes referred to as decedent or mother) owned 75 percent of the stock of Dowell Insurance Agency, Inc. (the stock or agency stock; the agency), at the time of her death. Decedent had previously sold 25 percent of the agency stock to her daughter, Patricia Low (sometimes referred to as daughter), and was receiving monthly installment payments from the sale. The obligation to make the installment payments[1] (the debt) was forgiven by decedent on her deathbed. Decedent's Last Will and Testament (the will) bequeathed her remaining stock to her daughter "with the understanding" that she would make monthly payments of $5,000 to decedent's son for 10 years. A codicil to decedent's will stated that monthly payments were to be made by the daughter to decedent's husband instead. After her mother's death, Patricia Low never made any of the monthly payments. Decedent's husband was the residuary beneficiary under decedent's will. Petitioner, decedent's estate, computed the sum of the monthly payments called for in the codicil to be $450,000, and claimed that amount as a marital deduction on its Federal estate tax return. After concessions, the issues for decision are:

(1) Whether decedent's husband inherited her agency stock on the failure of the daughter to make the payments called for in the codicil; if decedent's husband did not inherit the agency stock,

---

[1] The record does not show that an installment note was entered into by the daughter.

(2) whether decedent's husband inherited an interest in the stock that would qualify for the marital deduction under section 2056(a)[2] and, if so, the value of that interest; and

(3) whether decedent's cancellation of her daughter's debt to her resulted in a gift to her daughter.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of facts and the attached exhibits are incorporated herein by this reference. At the time the petition was filed, the legal residence of the executrix was in New Jersey.

Decedent and Dowell Insurance Agency, Inc.

Decedent purchased 100 percent of the agency in 1975. Before decedent's death, she was president and treasurer of the agency, and Patricia Low was secretary of the agency. The revenues of the agency were derived mostly from the sale of commercial insurance policies to contractors or manufacturing facilities. Both decedent and Patricia Low sold these policies. Decedent built up the agency for 15 years before she died. Decedent thought the agency was worth about $1 million when her will was written in 1988.

---

[2] Section references are to the Internal Revenue Code in effect at the date of decedent's death, and all Rule references are to the Tax Court Rules of Practice and Procedure.

Decedent previously had worked for another insurance agency where she started as a secretary and worked her way up to vice president over 17 years. She was one of the first women to own an insurance agency that sold commercial lines of insurance in northern New Jersey. Decedent was businesslike and tough; she dictated what she wanted in business contracts and letters.

During 1988 decedent had a cancer operation and a long recovery period. Decedent told her daughter that she felt the business should live on after her death. The business was decedent's legacy. She also told her daughter that she would like to see the agency built up and her daughter to have the opportunity to own the entire agency. After another bout with cancer, decedent died testate on July 27, 1990.

Decedent's Husband

Decedent's husband, Sidney Dowell (sometimes referred to as father or surviving spouse), was never active in the agency even though he was listed as its vice president. Patricia Low never saw her father at the agency's office. He was never licensed to sell insurance. Sidney Dowell was a blue collar worker who retired from his small electric motor repair business in about 1976. He had nothing to do with the insurance business nor any interest in the insurance business before or after decedent's death. Sidney Dowell died on May 2, 1994.

Patricia Low and Kenneth Dowell (sometimes referred to as the son) are the only children of decedent and Sidney Dowell.

Patricia Low

Patricia Low, the executrix, graduated from college in 1979 with a liberal arts degree in history and political science. She started with the agency in 1983 after working at various retail stores. While at the agency, she worked as a receptionist, a personal lines customer service representative, a commercial lines customer service representative, a claims person, and in sales. She worked every job except her mother's and as bookkeeper. Patricia Low worked full time with her mother for 6 years. Decedent was trying to teach her the business. Patricia Low became president of the agency and managed its day-to-day operations after decedent's death.

Kenneth Dowell

Kenneth Dowell has a bachelor's degree in history and psychology and a master's degree in history and works for PR News Wire in Jersey City. Kenneth Dowell never worked in the the agency. Kenneth Dowell's relationship with his parents was amicable. He is familiar with some of the circumstances surrounding his mother's will.

Decedent's Will

Jan Seigel performed all of decedent's general legal work. Jan Seigel was also Patricia Low's lawyer and the family's attorney. Jan Seigel met decedent in 1975 when he started his law practice in Hawthorne, New Jersey, in a building where they

both were tenants.  They saw each other daily.  Decedent executed her will on March 9, 1988.

Although Jan Seigel prepared decedent's will and codicil, decedent dictated the provisions concerning the devise of her agency stock.  The terms in the will and codicil relating to the agency were actually drafted by decedent; Jan Seigel simply copied decedent's language verbatim.  Decedent would bring legal documents to Jan Seigel and say:  "This is what I want.  Do this."  Paragraph Third of the will states in part:  "I give, devise and bequeath all of my stock * * * to my daughter, PATRICIA LOW, with the understanding that she will pay to my son, KENNETH A. DOWELL, the sum of Five Thousand Dollars ($5,000.00) per month for ten (10) years".[3]  Decedent's overriding intent with respect to her children was that they be treated equally, though she did not want her son to have any part of the agency. The payments in the will, namely $5,000 per month for 10 years, were intended to represent one-half of the value of the agency.

Buy-Sell Agreement

On November 2, 1989, decedent entered into a written stock purchase agreement (the agreement) in which she sold her daughter 25 percent of her agency stock on an installment basis for a price of $2,500 per month for 10 years.  Jan Seigel represented decedent in this transaction.  Decedent set the price of the

_____

[3]  The father was substituted for the son in the codicil to the will.

stock purchase and the terms of the agreement. Two stock certificates, each dated January 1, 1990, were issued. One certificate for 75 shares was issued to decedent, and the other for 25 shares was issued to her daughter. Jan Seigel prepared and issued Patricia Low's stock certificate, but it was not delivered to her. A partial amortization schedule relating to the agreement was prepared by William Grinwis, decedent's accountant, and given to Patricia Low. The agreement also gave decedent and her daughter the option to buy each other's agency stock upon certain conditions, including the death of a party.

Patricia Low made the monthly payments called for in the agreement until they were canceled. One payment was made 10 days late. Decedent informed her daughter that if she was late with another payment, decedent would cancel the agreement and tear up the stock certificate issued to her daughter.

First Codicil to the Last Will and Testament

Decedent executed a codicil to her will on March 16, 1990. The codicil states in part:

> I hereby amend Paragraph Third of my Last Will and Testament to provide as follows: The sum of Three Thousand Seven-Hundred Fifty Dollars ($3,750.00) per month for a period of ten (10) years shall be paid to my husband, SIDNEY F. DOWELL. In addition, he shall be entitled to one-half (½) of the unpaid monthly payments due me at the time of my death from my daughter, PATRICIA LOW, from the sale of Twenty-Five (25 %) Percent of the stock in Dowell Insurance Agency, Inc.

The codicil was written to make two changes: (1) To substitute Sidney Dowell, decedent's husband, for Kenneth Dowell, decedent's

son, as recipient of the payments from Patricia Low; and (2) to reflect the fact that Patricia Low had already purchased 25 percent of the agency stock. Sidney Dowell was substituted for Kenneth Dowell in the codicil because Kenneth was going through a divorce and decedent did not want his wife to make a claim on the payments called for in the will. Jan Seigel advised decedent that he did not think Kenneth Dowell's wife could make a claim on an inheritance under New Jersey law, but decedent said she really did not care what his advice was and that she wanted to do it her way. She wanted to make sure that her daughter-in-law could not get the payments "in any way, shape, or form". The change of recipient in the codicil from Kenneth Dowell to Sidney Dowell was not occasioned by decedent's being upset with Kenneth or by a family dispute between decedent and him.

Under the terms of the codicil, Patricia Low had to pay to her father a total of $5,000 per month for almost 10 years, as her monthly payments under the codicil were $3,750 and one-half of the $2,500 that she owed under the agreement.

The codicil was written approximately 2 years after the will was executed. Decedent discussed the codicil with her son in 1990. She said that the provision in the original will by which he would receive payments from the business was being changed. Decedent told her son that the reason for the change was that he had a divorce case pending and decedent did not want to have the payments be part of a property settlement in his divorce case.

Decedent died July 27, 1990, 4 months after the codicil was written.  Kenneth Dowell did not inherit anything from decedent's estate.

## Cancellation of the Debt

Decedent was readmitted to the hospital in July of 1990 and was told she had only a short time to live.  Decedent knew her daughter would have a problem paying for the agency stock.  On or about July 18, 1990, 9 days before her death, decedent asked her daughter to bring the agreement to her in the hospital.  Patricia Low brought decedent the only thing she had at home, the amortization schedule, which decedent signed, dated, and marked "paid in full".  Decedent told her daughter that she was canceling the payments due under the agreement.  Decedent did not say why, and her daughter did not ask for her specific reason. At the time of the cancellation, Patricia Low had made six payments under the agreement.  The amortization schedule shows her remaining obligation as $183,520.

Patricia Low's Federal income tax return for the year 1990 does not include any item of income regarding debt cancellation.

## Post-Death Events

After decedent died, her daughter went to Jan Seigel and asked him what she should do as potential executrix.  She did the same with William Grinwis.  Patricia Low never asked Jan Seigel any questions about the payments totaling $450,000 ($3,750 x 12 x 10) that she was to make to her father under the codicil.

Sometime in August 1990 after her mother's death, Patricia Low decided not to make payments to Sidney Dowell. However, she never told him that the remaining 75 percent of the agency stock was his. Patricia Low never told Jan Seigel, and he was unaware, that she was not making the payments.

Neither Patricia Low nor Jan Seigel transferred decedent's 75 percent of the agency stock to Sidney Dowell. Jan Seigel prepared the New Jersey inheritance tax return for decedent's estate. The New Jersey inheritance tax return, which was signed and filed by Patricia Low, shows her receiving, as beneficiary, decedent's agency stock, less payments totaling $450,000 to be made to her father.

William Grinwis prepared the Federal estate tax return, in part, from the information contained in the New Jersey inheritance tax return which was provided to him by Jan Seigel. William Grinwis was given copies of the will and codicil when he prepared the estate tax return in either late 1990 or early 1991. The Federal estate tax return, which was signed and filed by Patricia Low, deducts the $450,000 in projected payments as a bequest to the surviving spouse.

Forms 1120S (U.S. Income Tax Returns for an S Corporation) were filed for the agency for the years 1988 through 1993. The 1990 through 1993 corporate tax returns were prepared by William Grinwis and signed by Patricia Low as president.

The 1990 Form 1120S of the agency shows Patricia Low owning 25 percent of the stock for the first 7 months of the year and 100 percent of the stock for the last 5 months of the year. Patricia Low signed this return as president of the agency.

The Forms 1120S of the agency for 1991, 1992, and 1993 each show Patricia Low as owning 100 percent of the agency stock. These returns were signed by Patricia Low as president. The Schedule K-1 for 1991 shows a loss of $80,830 flowing through to Patricia Low, all of which she claimed on her individual Federal income tax return for 1991. The Schedules K-1 for 1992 and 1993 show agency income of $28,594 and $37,462, respectively, flowing through to Patricia Low, all of which she reported on her Federal tax returns.

William Grinwis prepared Patricia Low's individual tax returns for the years 1990, 1991, 1992, and 1993.

Procedural History of the Case

Respondent determined that the alleged bequest of $450,000 did not qualify for the marital deduction because it was a "non-deductible terminable interest" under section 2056(b). Petitioner originally alleged in the petition that "Decedent's Will creates an unequivocal non-terminable obligation to pay to her husband, or his estate, $3,750 per month for 10 years". Respondent's answer denied petitioner's assignment of error in that regard and denied the facts alleged by petitioner in support of the $450,000 deduction. The Court granted respondent leave to

amend her answer, and she increased the estate tax deficiency by treating, as a gift, decedent's cancellation of her daughter's obligation to pay for the 25 percent of agency stock. The Court granted petitioner leave to amend its petition, and petitioner subsequently alleged that decedent's will made a bequest of the agency stock to her daughter subject to a condition precedent. Since the asserted condition, payment of $3,750 a month for 10 years, was not met, petitioner alleged that the bequest to decedent's daughter failed, and that the agency stock passed to the surviving spouse as the residuary beneficiary. Petitioner alleged that the entire value of decedent's agency stock, $567,534, qualifies for the marital deduction. After trial, but before opening briefs were due, petitioner and respondent filed a "Stipulation of Settled Issue" that stated:

> Since the payments called for in the codicil, namely the sum of $3,750.00 per month for a period of ten years, have not been made, petitioner no longer contends that the payments, had they been made, would have qualified for the marital deduction pursuant to I.R.C. section 2056.

OPINION

The issues in this case revolve around the decedent's cancellation of her daughter's debt and the provisions of decedent's will and codicil relating to the agency stock and the monthly payments. The language in the will concerning the agency stock was drafted by decedent, and the parties dispute its interpretation.

A.    Who Inherited the Agency Stock

1.    Contentions of the Parties

Respondent argues that Patricia Low inherited the agency stock.  According to respondent, the language "with the understanding that she will pay" should be interpreted in one of two ways.  Either the language subjected the bequest of agency stock to a charge to pay her father $3,750 a month for 10 years, or it created a condition subsequent to the bequest.

Under New Jersey law, a charge against property gives the holder of the charge a lien against the property to ensure payment.  Olsen v. Wright, 119 N.J. Eq. 103, 108, 181 A. 182, 185 (1935).  It is undisputed that decedent wanted to treat her children equally, though she wanted Patricia Low to eventually own the agency.  Originally, the will called for $5,000-a-month payments for 10 years ($600,000) to be made to Patricia Low's brother.  Decedent believed the agency was worth $1 million.  Decedent sold 25 percent of the agency to her daughter in 1989 on an installment basis that required payments of $2,500 a month for 10 years ($300,000).[4]  Respondent argues that the math of this arrangement is compelling; if 25 percent of the stock can be purchased for $300,000 of payments, then $600,000 of payments

_____

[4]  A loan amortization schedule was prepared by decedent's accountant which shows that this stream of payments, when discounted for a 10-percent annual interest rate, equates to a beginning principal balance of $189,177.91 or $7,567.12 a share. This value was also used in the agreement.

under identical terms equates to 50 percent of the value of the agency. According to respondent, decedent wanted to give all of the stock to her daughter while wanting her son to receive cash for one-half of the agency's value, thereby creating a charge against agency stock.

Respondent points out that after decedent's stock ownership fell to 75 percent, she executed the codicil to her will that decreased the monthly payments required under the will proportionately to $3,750 (75 percent x $5,000). Decedent's codicil also directed that Patricia Low had to make to her father only one-half of the $2,500 payments called for under the agreement. The codicil did not say what was to happen to the other half of the payments; respondent argues that the other half of the payments were to be forgiven. Consequently, Patricia Low still would be paying $5,000 a month ($3,750 + $1,250) for almost 10 years (one-half the value of the agency stock) to own 100 percent of the agency stock. The change in the recipient to the surviving spouse was to insure that decedent's daughter-in-law got none of the payments in a divorce settlement.

Respondent further argues that decedent did not intend to create a condition precedent, as petitioner contends. Under New Jersey law, if a condition precedent to a bequest fails, then the bequest fails; the bequest is never made. "[I]f a devise other than a residuary devise fails for any reason, it becomes a part of the residue." N.J. Stat. Ann. sec. 3B:3-36 (West 1983).

Under decedent's will, if the bequest to her daughter failed, the stock would pass to the surviving spouse as the residuary beneficiary. Since the surviving spouse had no insurance business experience, and was not licensed to sell insurance, respondent argues that decedent would never have allowed her husband to inherit 75 percent of the agency's stock.

Respondent's alternative argument is that the language created a condition subsequent. A condition subsequent under New Jersey law would cause the stock to vest immediately in Patricia Low but she would subsequently be divested of it if she failed to make the payments. Tizard v. Eldredge, 25 N.J. Super. 477, 481, 96 A.2d 689, 691 (1953).

Respondent cites various New Jersey cases to aid in construing decedent's will. New Jersey courts do not favor conditions in wills. Parmentier v. Pennsylvania Co. for Ins., 122 N.J. Eq. 25, 30, 192 A. 62, 65 (1937), affd. 124 N.J. Eq. 272, 1 A.2d 332 (1938). However, if the testator's intent shows that a condition is intended, then conditions subsequent are favored over conditions precedent. Id. Respondent also points out that if the language in question created a condition precedent, as petitioner contends, then the stock ownership could have been in limbo for 10 years had Patricia Low made the payments, a situation that decedent would not have intended. Respondent cites Tizard, which states: "Where there is a prolonged period of time prescribed by the words of the bequest

for its performance, it has been held to create a condition subsequent". <u>Tizard v. Eldridge</u>, 25 N.J. Super. at 481, 96 A.2d at 691.

Respondent also points out that Patricia Low acted as if she were the sole owner of the agency after decedent's death; she signed S corporation tax returns listing herself as the 100-percent owner of agency stock and reported the corresponding income or loss on her individual Federal income tax returns. These actions indicate that Patricia Low believed she had inherited the stock and had accepted the bequest, despite her testimony to the contrary at trial.

Petitioner argues that the stock bequest was subject to a condition precedent; if the monthly payments were not made by Patricia Low, then the condition would fail, and the stock would pass under the residuary clause to her father. Under New Jersey law, gifts subject to a condition precedent do not vest until the condition is met. <u>Tizard v. Eldredge</u>, <u>supra</u>. Under petitioner's reasoning, since it is undisputed that Patricia Low did not make the payments, the stock would pass directly from decedent's estate to the surviving spouse and thus qualify for the marital deduction. Petitioner argues that even if the will is interpreted as giving the stock to Patricia Low subject to a charge to make monthly payments, the surviving spouse still inherited something at decedent's death; namely, the right to either a stream of payments or the stock. This right, according

to petitioner, is an interest in the stock that qualifies for the marital deduction.

Petitioner also argues that Patricia Low paid no attention to the agency's corporate tax returns and her individual tax returns and that she did not notice that the returns treated her as the sole shareholder of the agency. Petitioner further argues that nothing Patricia Low did after her mother's death could possibly have a bearing on decedent's intentions when drafting her will and codicil.

In the alterative, petitioner argues that the will merely gave Patricia Low an option to buy the stock. Patricia Low testified that her mother told her she would have an opportunity to purchase the agency stock upon her mother's death, and petitioner argues that decedent's attorney, Jan Seigel, supported this interpretation. Respondent counters by pointing out that the testimony is self-serving, uncorroborated, and incredible since the stock purchase agreement already gave Patricia Low an option to purchase the agency stock upon her mother's death, and her actions after her mother's death call her veracity into question.

Petitioner argues that the New Jersey doctrine of probable intent controls the interpretation of decedent's will, not general rules of will construction. According to petitioner, decedent would not have wanted her daughter to inherit any stock if she did not fully and completely comply with her wishes, as

stated in the will and codicil. Petitioner stresses that decedent dealt with her daughter in a businesslike manner, even in personal matters which involved money. Petitioner believes that the only two possible interpretations that respect decedent's intent as to the stock are a condition precedent or an option to purchase. In either event, petitioner argues that the doctrine of probable intent requires us to construe the will in a manner that maximizes the marital deduction, citing In re Estate of Erickson, 74 N.J. 300, 377 A.2d 898 (1977).

2. New Jersey Law

As a general rule, State law determines the property rights and interests created by a decedent's will, but Federal law determines the tax consequences of those rights and interests; E.g., Morgan v. Commissioner, 309 U.S. 78, 80 (1940). Because decedent died a resident of New Jersey, the parties agree that New Jersey law governs the construction of her will. See Helvering v. Stuart, 317 U.S. 154, 162 (1942). The decisions of the Supreme Court of New Jersey are conclusive as to that State's law, but we give "proper regard" to relevant rulings of the lower State courts. Commissioner v. Estate of Bosch, 387 U.S. 456, 465 (1967). For petitioner to receive a marital deduction for the value of the agency stock, it must establish that the stock passed from decedent to the surviving spouse. The resolution of this threshold issue depends on the interpretation of the phrase "I give, devise and bequeath all of my stock * * * to my

- 19 -

daughter, PATRICIA LOW, with the understanding that she will pay". We must determine whether this phrase creates a condition precedent, a condition subsequent, a charge on the bequest, or an option to purchase agency stock.

"The judicial function in construing a will is to ascertain and give effect to the probable intention of the testator." In re Estate of Conway, 50 N.J. 525, 527, 236 A.2d 841, 842 (1967). The Supreme Court of New Jersey has given the following guidance on will construction and the "doctrine of probable intent":

> While a court may not, of course, conjure up an interpretation or derive a missing testamentary provision out of the whole cloth, it may, on the basis of the entire will, competent extrinsic evidence and common human impulses strive reasonably to ascertain and carry out what the testator probably intended should be the disposition if the present situation developed. [In re Estate of Burke, 48 N.J. 50, 64, 222 A.2d 273, 280 (1966).]
>
> We are no longer limited simply to searching out the probable meaning intended by the words and phrases in the will. Relevant circumstances, including the testator's own expressions of intent, Wilson v. Flowers, 58 N.J. 250, 262-63, 277 A.2d 199 (1971), must also be studied, and their significance assayed. Within prescribed limits, guided primarily by the terms of the will, but also giving due weight to the other factors mentioned above [citing In re Estate of Burke, supra], a court should strive to construe a testamentary instrument to achieve the result most consonant with the testator's "probable intent." [Engle v. Siegel, 74 N.J. 287, 291, 377 A.2d 892, 894 (1977); emphasis added.]
>
> The obligation of a court * * * is to effectuate the probable intent of the testator when consideration of the will as a whole together with extrinsic evidence, demonstrates, under all the circumstances, that a patent or latent ambiguity exists in the language used and such intent, overcoming the mere literal reading of

the instrument, is thereby made "manifest."  * * *  [<u>In re Estate of Munger</u>, 63 N.J. 514, 521, 309 A.2d 205, 209 (1973); citation omitted.]

See also N.J. Stat. Ann. sec. 3B:3-33 (West 1983).

As both parties have argued, New Jersey also has specific guidelines on will construction.  "[C]ourts favor the immediate vesting of estates and will construe a condition to be subsequent wherever possible, rather than precedent * * * unless such a construction would be clearly inconsistent with the intention of the testator."  <u>Fidelity Union Trust Co. v. Egenolf Day Nursery Association</u>, 64 N.J. Super. 445, 455, 166 A.2d 402 (1960).  In <u>Tizard v. Eldredge</u>, 25 N.J. Super. at 481, 96 A.2d at 691, the Superior Court of New Jersey stated:

> When faced with the question of whether or not a devise or bequest is absolute or conditional, the construction making the bequest absolute will be preferred.
>
> *     *     *     *     *     *     *
>
> Where there is a prolonged period of time prescribed by the words of the bequest for its performance, it has been held to create a condition subsequent.  * * *

Where personalty "is devised to a person who is directed to pay a legacy, the legacy is an equitable charge upon the devise unless a contrary intention is expressed in the will or can be fairly implied from its provisions."  <u>D'Arcangelo v. D'Arcangelo</u>, 137 N.J. Eq. 63, 68, 43 A.2d 169, 172 (1945).  However, the key for construing wills remains the probable intent of the testator. "Rules for construing wills are but guides, drawn from the common

experience of mankind, to assist the court in finding the testator's intent." <u>Fidelity Union Trust Co. v. Robert</u>, 67 N.J. Super. 564, 574, 171 A.2d 348, 354 (1961).

3.    <u>Application of New Jersey Law</u>

We shall be mindful of the New Jersey Supreme Court's language in <u>Engle v. Siegel</u>, <u>supra</u>, and start with the will to ascertain decedent's intent.  Decedent herself drafted the language whose interpretation is questioned.  Her will stated: "I give, devise and bequeath all of my stock * * * to my daughter", which clearly states an intent to make a bequest of decedent's stock; the present tense is used.  The second part of the sentence, "with the understanding that she will pay to my son" indicates action that must be taken in the future, after the daughter had inherited the stock; the future tense is used. However, the exact meaning of the expression "with the understanding" is sufficiently ambiguous that it is appropriate to examine extrinsic evidence.  <u>Wilson v. Flowers</u>, 58 N.J. 250, 263, 277 A.2d 199, 207 (1971).

At the time the codicil was drafted, decedent wanted two things:  (1) For her daughter to own all of the agency stock, and (2) for her daughter to pay for one-half of decedent's stock.[5] Our will construction problem is caused by her daughter's failure

---

[5]  The daughter's obligation to make payments under the agreement was forgiven by decedent on her deathbed, after the codicil had been drafted.

to make the payments.  We must ask ourselves, how would decedent resolve this situation if she knew of the problem?  In re Estate of Burke, supra.

We first deal with petitioner's argument that the will must be construed to maximize the marital deduction.  The case cited by petitioner, Estate of Ericson v. Ericson, 74 N.J. 300, 377 A.2d 898 (1977), does not support petitioner's argument.  The court in Ericson specifically found that one of the intentions of the testator was to minimize taxes through the use of the marital deduction, and thus the court interpreted the will accordingly.  In our case, there is no evidence of an intent to minimize taxes, much less utilize the marital deduction.  Therefore, an intent to maximize the marital deduction will not be read into the will.

We do not believe that decedent wanted to create an option for her daughter to buy the stock.  Decedent wanted her daughter to own the stock.  The daughter owned 25 percent of the agency stock and already had an option to purchase the remaining stock upon her mother's death.  The stream of payments was calculated to equal only one-half the value of decedent's agency stock.  Decedent's own words were:  "I give, devise and bequeath"; these are not words that a business person would use to create an option.  Patricia Low's testimony that her mother wanted her "to have the opportunity to buy the stock" upon her death is not plausible as a true reflection of her mother's intent under the circumstances.  Petitioner offered no other evidence to support

this theory.  Patricia Low consistently acted as if she owned 100 percent of the agency as shown by the New Jersey inheritance tax return, the Federal estate tax return, the agency's Federal corporate tax returns, and her Federal individual income tax returns.  Although her actions after her mother's death do not reflect on decedent's intent, they do reflect on Patricia Low's credibility.  Contrary to her testimony at trial, we find it implausible that Patricia Low, an experienced business person, never noticed that numerous tax returns, all signed under the penalties of perjury, listed her as the sole owner of the agency.  Patricia Low reported and paid income tax on 100 percent of the agency's income after her mother's death.[6]  "We know of no rule that uncontradicted testimony must be accepted by a court finding the facts, particularly where, as here, the testimony is given by interested parties."  Wood v. Commissioner, 338 F.2d 602, 605 (9th Cir. 1964), affg. 41 T.C. 593 (1964).  We find it highly unlikely that in the will and codicil decedent intended to give to her daughter merely an option to buy agency stock.

Nor do we believe that decedent would have wanted her daughter to have the stock subject to a charge to make the installment payments.  A charge would mean that if Patricia Low failed to make the installment payments, she would, nevertheless, still own the stock.  Her father's only recourse would be to go

---

[6]  The agency was an S corporation.

to court to enforce the equitable lien on the stock.  The record is replete with compelling evidence that decedent conducted business only on her own terms.  Simply put, business arrangements were done her way or not at all.  Decedent would not have wanted her daughter to keep the stock if she did not follow her wishes.

Having eliminated the creation of a charge or an option to purchase, we are left with a condition, precedent or subsequent, as best reflecting the probable intent of decedent.  This interpretation is consistent with petitioner's argument and respondent's alternative argument on brief that decedent wanted the bequest of stock to be subject to a condition.

We believe the best indication of decedent's intent can be derived from how she handled an earlier transaction with her daughter, her sale of 25 percent of the agency stock to her daughter.  The agreement, like the will, called for 10 years of monthly payments.  The stock was issued in Patricia Low's name as of the effective date of the agreement, January 1, 1990. Although Patricia Low became the owner of 25 percent of the agency stock on January 1, 1990, physical possession of the stock certificate was to be withheld, by her mother's instruction, until all the payments had been made.  When a single payment was made late, decedent threatened to tear up her daughter's stock certificate.

In summary, Patricia Low was issued agency stock at the beginning of the transaction, not after all the payments had been made.  Only physical possession of the stock certificate was denied to her, a common security technique when dealing with the sale of commercial paper.  Decedent's threatened remedy to deal with a default was to divest her daughter of ownership of the stock.

We hold that the most probable construction of decedent's will is that she wanted her daughter to have the stock upon decedent's death, but to be divested of it should her daughter fail to make the payments, a condition subsequent.  "Where there is a prolonged period of time prescribed by the words of the bequest for its performance, it has been held to create a condition subsequent."  Tizard v. Eldredge, 25 N.J. Super. at 481, 96 A.2d at 691.

B.   Marital Deduction Issue

1.   Law

Section 2056(a) allows a marital deduction from the value of the adjusted gross estate in "an amount equal to the value of any interest in property which passes or has passed from the decedent to his surviving spouse, but only to the extent that such interest is included in determining the value of the gross estate."  To obtain the marital deduction, an executor must establish (1) that the decedent was survived by his or her spouse; (2) that the property interest passed from the decedent

to his or her spouse; (3) that the property interest is a deductible interest; and (4) the value of that property interest. Sec. 20.2056(a)-1(b), Estate Tax Regs. Item (1) is not in dispute, and only petitioner has addressed item (4), which we need not address for the reason stated below. Deductions are a matter of legislative grace; petitioner has the burden of showing that it is entitled to any deduction claimed. <u>New Colonial Ice Co. v. Helvering</u>, 292 U.S. 435, 440 (1934).

2. <u>Whether the Agency Stock Qualifies for the Marital Deduction</u>

We have held that the agency stock was inherited by Patricia Low subject to a condition subsequent. Patricia Low did not make the payments called for in decedent's will. Therefore, Patricia Low was divested of her rights to the agency stock and they were passed to her father, the surviving spouse. However, at the time of decedent's death, the agency stock did not pass to the surviving spouse. "It is well settled that the nature of the interest in property passing to the surviving spouse and the valuation of that interest are to be determined as of the time of decedent's death." <u>Provident Natl. Bank v. United States</u>, 581 F.2d 1081, 1086 (3d Cir. 1978) (citing <u>Jackson v. United States</u>, 376 U.S. 503, 508 (1964)); sec. 20.2056(b)-4(a), Estate Tax Regs. Therefore, we hold that the agency stock is not eligible for the marital deduction.

3.  <u>Whether the Stream of Payments Constitutes an Interest in the Agency Stock Which Qualifies for the Marital Deduction</u>

Even with the stock subject to a condition subsequent, the surviving spouse inherited either the right to receive the stream of monthly payments or, ultimately, the stock.  Petitioner argues that since the surviving spouse was entitled to either the stock or the stream of payments, he was vested in a property interest in the stock that passed from decedent at her death.  Respondent argues that, as no payments were actually made, there can be no marital deduction since no property passed from decedent to the surviving spouse.  Respondent also points out that petitioner has settled this issue by entering into the following "Stipulation of Settled Issue":

> Since the payments called for in the codicil, namely the sum of $3,750.00 per month for a period of ten years, have not been made, petitioner no longer contends that the payments, had they been made, would have qualified for the marital deduction pursuant to I.R.C. section 2056.

Focusing on the phrase "no longer contends", we will treat this "Stipulation of Settled Issue" as a concession by petitioner.

Respondent believes that petitioner has restricted itself to arguing that the surviving spouse inherited the stock at decedent's death, rather than an interest in the stock represented by the payments.  Petitioner seems to treat the concession as an abandonment of its original pleading that the payments themselves qualify for the marital deduction.  However,

petitioner apparently believes that its amended petition leaves it room to argue that the surviving spouse inherited either the stock or an interest in the stock. We believe that respondent's interpretation is correct; petitioner has conceded arguing that the stream of payments, however categorized, qualifies for the marital deduction.[7] Therefore, accepting petitioner's concession, we hold that decedent's husband did not inherit an interest in the agency stock that qualifies for the marital deduction.

## C. Cancellation of Debt Issue

Respondent first raised the cancellation of debt issue in an amended answer. Consequently, she bears the burden of proof on this issue. Rule 142(a). The facts surrounding the cancellation of Patricia Low's obligation to pay her mother under the agreement are not in dispute. While on her deathbed, decedent canceled her daughter's obligation to make the payments called for in the agreement; no reason was given by decedent. Petitioner argues that decedent was not making a gift to her daughter but was reducing the purchase price of the stock. Petitioner further argues that decedent had no donative intent, so there could be no gift. No evidence was offered by petitioner

---

[7] We note that the daughter, who neither made the payments to her father called for in her mother's will, nor, as executrix, ever caused the Agency stock to be transferred to her father, argues that the estate is nevertheless entitled to a marital deduction. We find this argument to be disingenuous.

to support this theory.  Respondent argues that donative intent is not a requirement for a taxable gift, citing section 2512(b):

> Where property is transferred for less than an adequate and full consideration in money or money's worth, then the amount by which the value of the property exceeded the value of the consideration shall be deemed a gift, and shall be included in computing the amount of gifts made during the calendar year.

Respondent reasons that since the evidence shows that no consideration was given by Patricia Low for the cancellation of the debt, the amount of the gift must equal the debt, citing section 25.2512-8, Gift Tax Regs.  Respondent is correct.

> The gift tax regulations provide:

> Transfers reached by the gift tax are not confined to those only which, being without a valuable consideration, accord with the common law concept of gifts, but embrace as well sales, exchanges, and other dispositions of property for a consideration to the extent that the value of the property transferred by the donor exceeds the value in money or money's worth of the consideration given therefore.  * * *  [Sec. 25.2512-8, Gift Tax Regs.]

> The Supreme Court has interpreted these provisions as follows:

> Congress chose not to require an ascertainment of what too often is an elusive state of mind.  For purposes of the gift tax it not only dispensed with the test of "donative intent".  It formulated a much more workable external test, that where "property is transferred for less than an adequate and full consideration in money or money's worth," the excess in such money value "shall, for the purpose of the tax imposed by this title, be deemed a gift . . ."  And Treasury Regulations have emphasized that common law considerations were not embodied in the gift tax. [Commissioner v. Wemyss, 324 U.S. 303, 306-307 (1945) fn. ref. omitted.]

Decedent forgave a debt owed by her daughter, a family member. No consideration was given for the cancellation. "The presumption is that a transfer between closely related parties is a gift." Estate of Reynolds v. Commissioner, 55 T.C. 172, 201 (1970). Respondent has met her burden of proof on this issue, and petitioner has offered no evidence, only conjecture, to counter such a finding. We hold that the cancellation of the debt is a taxable gift from decedent to her daughter.

　　To reflect the foregoing,

Decision will be entered

under Rule 155.